# Richmond

## SEYMOUR WILKS V. COMMONWEALTH OF VIRGINIA.

April 22, 1977.

Record No. 760846.

Present, All the Justices.

*Alvin B. Fox (R. Rick Reiss; Ellenson, Fox and Wittan, Inc.,* on brief), for plaintiff in error.

*Jim L. Chin, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

The sole question for decision in this case is whether the trial court erred in admitting into evidence a tape recording of a conversation between an arsonist and his coconspirators. The error relied upon is an alleged violation of the provisions of

Chapter 6 of Title 19.2 of the Code of Virginia, which chapter relates to "Interception of Wire or Oral Communications."

This question stems from the trial court's denial of a motion to suppress the tape recording during the jury trial of the defendant, Seymour Wilks, upon eleven indictments for arson and related offenses. The jury convicted the defendant on ten of the indictments, and the trial court sentenced him to serve a total of twenty years in the penitentiary and to pay a fine of $1,000.

Because the sufficiency of the evidence to sustain the convictions is not challenged, we will recite only those facts necessary to determine the question of the admissibility of the disputed tape recording. The record shows that the defendant was president of a family corporation which owned a number of unoccupied, dilapidated dwellings in Newport News. The defendant engaged two of his employees, Lawrence Hockaday and Cornald Cunningham, to burn the buildings so he could collect insurance. The incendiary plan was carried out several times with apparent success; insurers paid in excess of $30,000 on account of the fire losses.

On October 31, 1975, however, while attempting to enter one of the targeted houses for the purpose of setting it afire, Hockaday and Cunningham were arrested. During interrogation by the police, Hockaday volunteered to be "bugged" and to engage the defendant in conversation concerning the fires.

The next day, Hockaday was wired with a microphone. He and Cunningham went to the defendant's office, while the police, equipped with monitoring and recording devices, waited in a nearby parking lot.

Unaware of the arrest of Hockaday and Cunningham, the defendant discussed with them not only the details of previously set fires but also plans for the burning of other buildings. The waiting police officers overheard the conversation and recorded it on tape.

At trial, over the objection, of the defendant, the tape recording was admitted into evidence and played before the jury. This, the defendant contends, was error because in violation of Chapter 6 of Title 19.2 of the Code of Virginia.

■ Chapter 6 is Virginia's version of the federal statutes relating to "Wire Interception and Interception of Oral

Communications," included in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520. While similar in many respects to the federal law, Chapter 6 of Title 19.2 represents "a more restrictive and cautious approach to wiretapping." *Criminal Law, Survey of Developments in Virginia Law: 1972-1973*, 59 Va. L. Rev. 1458, 1475 (1973).

In general, Chapter 6 of Title 19.2 regulates (1) the interception, by any electronic, mechanical, or other device, of certain "wire or oral communications" as defined in the chapter, and (2) the disclosure by any person of the contents of any such wire or oral communication which has been so intercepted. Except as permitted by the terms of the chapter, it is unlawful, constituting a felonious offense, for any person wilfully to intercept, or wilfully to disclose the contents of, any wire or oral communication. Va. Code § 19.2-62.

Not all interceptions, however, are unlawful. It is not unlawful for a person to intercept a wire or oral communication if such person is a party to the communication or if one of the parties to the verbal exchange has given prior consent to the interception. Va. Code § 19.2-62(2) (b). And a court of record, upon application of the Attorney General, by order may authorize the interception of wire or oral communications when such interception reasonably may be expected to provide evidence of commission of the offenses of extortion, bribery, or felony drug violation. Va. Code § 19.2-66.[1]

Neither is every disclosure unlawful. The chapter does provide that no part of the contents of an intercepted communication and no information derived therefrom may be received in evidence if the disclosure would be in violation of the chapter. Va. Code § 19.2-65. But it is not a violation for a person to disclose the contents of a communication, intercepted in accordance with the provisions of the chapter, while testifying under oath in any criminal proceeding for an offense of extortion, bribery, or felony drug violation or any conspiracy or attempt to commit those offenses. Va. Code § 19.2-67(3).[2]

---

[1] A 1976 amendment to § 19.2-66 added "any conspiracy to commit any of the foregoing offenses" to the list of crimes for which interception may be authorized.

[2] Pursuant to a 1976 amendment, testimonial use of intercepted information is now permitted for the additional offenses of "crimes of violence or official corruption punishable as a felony." Va. Code § 19.2-67(5).

The defendant concedes that interception of the oral communication to which he was a party was not unlawful because consented to by Hockaday. The defendant argues, however, that *disclosure* of the contents of the communication by admitting the tape recording into evidence was error because, under Chapter 6 of Title 19.2, disclosure of information is permissible only when the interception has been authorized by court order, and no order was obtained in this case; furthermore, the offense of arson, for which the defendant was on trial, is not included on the list for which intercept authority may be granted or for which testimonial use, absent intercept authority, is permitted.

We do not reach, however, the questions raised by these arguments. We believe the dispositive issue in the case is what the defendant terms the "threshold" question in the interpretation of Chapter 6 of Title 19.2, *viz.*, the definition of the term "oral communication." The defendant relates his argument on this point to the question whether he has standing to object to the alleged noncompliance with the provisions of Chapter 6. But the question, in our view of the case, is not one of standing. Even if we assume the defendant's standing, noncompliance with the provisions of Chapter 6 would not render inadmissible the disputed evidence if the defendant's conversation does not fall within the definition of an "oral communication" protected by the chapter.

■ The term "oral communication" is defined in Chapter 6 as follows:

> " *'Oral communication'* means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectations." Va. Code § 19.2-61(2).[3]

Thus, an oral communication is not protected by Chapter 6 unless (1) the speaker exhibits the expectation that his conversation will not be intercepted, *and* (2) the circumstances justify the expectation of noninterception. Although both aspects of the test are important, we focus our inquiry upon the second prong.

---

[3] By contrast, the definition of "wire communication" in § 19.2-61(1) does not contain any language requiring an expectation of noninterception.

Except for an inconsequential difference, Virginia's definition of the term "oral communication" is identical with the definition contained in the federal wiretapping statutes. 18 U.S.C. § 2510(2). Interpreting the term in *United States* v. *Carroll,* 337 F.Supp. 1260 (D.D.C. 1971), the court stated that the definitional requirement of justifiable expectation of noninterception reflects the "existing constitutional law on right to privacy." 337 F.Supp. at 1263. Similarly, in *United States* v. *Pui Kan Lam,* 483 F.2d 1202, 1206 (2d Cir. 1973), the court stated that the statutory definition of "oral communication," with its requirement of justifiable expectation of noninterception, "tracks" the Fourth Amendment [4] concept of right to privacy. In each of these cases, the particular conversation was held not within the statutory definiton of "oral communication" because the speaker in each instance, as a matter of law, did not have a justifiable expectation of privacy.

We agree with the *Carroll* and *Pui Kan Lam* courts that the justifiable expectation of noninterception contained in the statutory definition of the term "oral communication" is equivalent to the constitutional expectation of privacy. Delineating the constitutional expectation of privacy in the context of intercepted conversations, the United States Supreme Court, in *United States* v. *White,* 401 U.S. 745 (1971), stated:

"[A] defendant has [no] justifiable and constitutionally protected expectation that a person with whom he is conversing will not then or later reveal the conversation to the police.

"[H]owever strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities. In these circumstances, 'no interest legitimately protected by the Fourth Amendment is involved,' for that amendment affords no protection to 'a wrongdoer's misplaced

---

[4] The Fourth Amendment reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.' " 40 U.S. at 749.

". . . .

"If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks." 401 U.S. at 751.

*See also Hoffa v. United States*, 385 U.S. 293, 302 (1966).

Applying these common-sense principles to the case at hand, we hold that the defendant, as a matter of law, did not have a justifiable expectation of noninterception of his conversation with his coconspirators. In embarking upon his incendiary scheme with Hockaday and Cunningham, the defendant assumed the risk that either or both the coconspirators, if apprehended, would confess complicity in the plan and would report any conversation with the defendant which incriminated him in the plot. No less was the risk assumed by the defendant that one of the coconspirators would record, or would transmit for recording by others, the contents of the conspiratorial conversations. These were risks of which the defendant, considering the circumstances of his utterances, should have been fully aware.

Clearly, the defendant's right to privacy would not have been violated by Hockaday's revelation to the police, unaided by an electronic recording, of the conversation at issue in this case. It is equally clear that the defendant's right to privacy was not invaded when Hockaday transmitted and the police officers recorded the conversation.

Because, under the circumstances, the defendant did not have a justifiable expectation of noninterception of his colloquy with Hockaday and Cunningham, we hold that the conversation does not fall within the definition of an "oral communication" protected by Chapter 6 of Title 19.2 of the Code of Virginia. Accordingly, the trial court did not err in admitting into evidence the tape recording of the conversation. The judgment of the trial court, therefore, will be affirmed.

*Affirmed.*