COURT OF APPEALS OF VIRGINIA

Present: Judges Willis, Fitzpatrick and Annunziata
Argued at Alexandria, Virginia


SAMUEL WISE CHANG
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2599-95-4    JUDGE JOHANNA L. FITZPATRICK
                                       NOVEMBER 5, 1996
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                    Alfred D. Swersky, Judge

          Cary Steven Greenberg (John M. Tran;
          Greenberg, Bracken & Tran, on briefs), for
          appellant.

          Marla Graff Decker, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Samuel Wise Chang (appellant) was convicted in a jury trial

of unlawfully distributing anabolic steroids and unlawfully

prescribing Schedule III controlled substances.  On appeal, he

contends that the trial court erred in:  (1) finding the evidence

sufficient to support convictions for the unlawful distribution

of anabolic steroids; (2) improperly instructing the jury

regarding the elements of the offenses; (3) allowing the

Commonwealth's expert witness to testify regarding the

potentially harmful side effects of anabolic steroids; (4)

allowing the Commonwealth's expert witness to testify regarding

the hypothetical treatment of a patient; (5) finding the evidence

sufficient to support convictions for the unlawful prescribing of

─────────────────────
        [*]Pursuant to Code § 17-116.101 this opinion is not
designated for publication.

hydrocodone; (6) allowing the Commonwealth's expert witness to testify regarding the appropriate use of anabolic steroids; (7) denying appellant's motion to suppress the evidence seized from appellant's office; and (8) denying appellant's motion to suppress the evidence recovered though the use of undercover body wires.  For the following reasons, we affirm the trial court.

## BACKGROUND

Appellant is a general physician licensed to practice in Virginia.  From the fall of 1992 through the spring of 1994, appellant prescribed to various individuals anabolic steroids including Decadurabolin, Halotestin, Testosterone Cypionate, Anadrol, and the drugs Vicodin and Hydrocodone.

The Alexandria Police Department obtained a search warrant for appellant's office after gathering information in an undercover investigation that included drug purchases by undercover police officers and others who wore "body wires." During the search of appellant's office, the police seized certain named patient files, as well as records of patients not specifically named in the search warrant.  As a result of the undercover investigation, appellant was indicted on seventeen counts of unlawfully and feloniously distributing anabolic steroids, and seven counts of unlawfully prescribing a schedule III controlled substance.

On May 18, 1995, the trial court denied appellant's motions to suppress the evidence obtained from the search of appellant's

office and evidence recovered through the use of body wires.

At trial, over appellant's objections, the court allowed the Commonwealth's witness, Dr. Frank Petrone (Dr. Petrone), to testify as an expert regarding (1) medically acceptable practices of dispensing anabolic steroids; (2) harmful side effects of abusing large quantities of anabolic steroids; and (3) the hypothetical treatment of a patient. Appellant's expert witness, Dr. Alvin Goldstein (Dr. Goldstein), testified that anabolic steroids, although recently in disfavor by the medical community, have "medically acceptable" applications, especially when administered in small doses.

### I. SUFFICIENCY OF THE EVIDENCE

At trial, appellant moved to strike the evidence and to dismiss the misdemeanor counts because he claimed there was "no sufficient evidence for the jury to find that there was in fact bad faith in this doctor prescribing these medications for pain." (Emphasis added). Appellant then moved to strike and dismiss the remaining felony counts, because "there's been nothing offered which would show a reasonable juror beyond a reasonable doubt that there was bad faith of [appellant] with respect to the . . . felony counts." (Emphasis added). Later, at the close of all the evidence, appellant made merely "a motion for the record for a motion to strike the evidence in all the counts."

On appeal, appellant contends that he should not have been convicted of unlawful distribution of anabolic steroids, in

3

violation of Code § 18.2-248.5, because the evidence did not support a finding that he "distributed" (emphasis added) the steroids and that the evidence did not support his convictions of unlawfully prescribing hydrocodone in violation of Code §§ 18.2-260 and 54.1-3408.

The Court of Appeals will not consider an argument on appeal that was not presented to the trial court. Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (citing Rule 5A:18).

Appellant argues that, even though he failed to preserve these issues in the trial court, the ends of justice exceptions to Rule 5A:18 should be applied.

"[T]o avail himself of the [ends of justice exception] the defendant ha[s] to affirmatively show [that] 'a miscarriage of justice [has] occurred, not . . . that a miscarriage might have occurred' [and it] requires that the error be clear, substantial and material." Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989) (quoting Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987)). The record does not reflect a reason to invoke this exception. Accordingly, Rule 5A:18 bars our consideration of these issues.

## II. JURY INSTRUCTIONS

Next, appellant argues that the trial court improperly instructed the jury regarding the elements of distribution of anabolic steroids, by expanding the definition of "distribute" to

4

include "administer[], prescribe[] or dispense[]," and did not properly instruct the jury regarding the "good faith" element of the offenses.

Appellant failed to object at trial to the "distribution" aspect of this instruction. "No ruling of the trial court will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. Accordingly, Rule 5A:18 also bars our consideration of this question on appeal, and the record reflects no reason to invoke the good cause or ends of justice exceptions to Rule 5A:18 regarding this issue. Brown, 8 Va. App. at 132, 380 S.E.2d at 11.

Both appellant and the Commonwealth submitted proposed instructions on "good faith." The judge considered the instructions proffered and, pursuant to appellant's request that the jury be instructed that a conviction could not be based on the civil negligence standard, fashioned a compromise instruction including the sentence "[m]ere negligence is not a lack of good faith." Appellant now argues that the jury should have been instructed on the definition of negligence. However, he did not make this argument at trial, nor did he request such an instruction at trial. Jacques, 12 Va. App. at 593, 405 S.E.2d at 631; Rule 5A:18.

5

Furthermore, "[w]hile the ends of justice exception is narrow, the exception 'requires correction of an instruction which allows a jury to convict a defendant without proof of an element of a crime.'" Allen v. Commonwealth, 20 Va. App. 630, 639, 460 S.E.2d 248, 252 (1995) (citations omitted). We hold that the trial court properly instructed the jury and no element of the crime was unproven.

### III.   EXPERT WITNESS TESTIMONY

Appellant next argues that the trial court erred in qualifying the Commonwealth's witness Dr. Petrone as an expert regarding the use of anabolic steroids; in allowing him to testify regarding adverse side effects of steroid abuse; and in allowing him to give an opinion based on a hypothetical patient. After objecting to Dr. Petrone's credentials and testimony, appellant specifically questioned his own expert, Dr. Goldstein, regarding the "medically accepted uses of anabolic steroids" and whether he agreed with Dr. Petrone's statement that "as of 1992, there are no, absolutely no medically accepted uses of anabolic steroids." In addition, appellant asked Dr. Goldstein whether, hypothetically, anabolic steroids are appropriate for patients (1) with chronic fatigue, muscle fatigue or muscle weakness, or (2) wishing to gain weight because they are weak.

"The qualification of an expert is within the sound discretion of the trial court." Lane v. Commonwealth, 223 Va. 713, 718, 292 S.E.2d 358, 361 (1982).

> A trial court will not be reversed for allowing a witness to testify as an expert unless it appears clearly that he was not qualified in the field in which he gives evidence. The question of qualification is largely in the discretion of the trial judge . . . . An expert in a criminal case "may give an opinion based [only] upon his own knowledge of facts disclosed in his testimony or . . . upon facts in evidence assumed in a hypothetical question," but the witness may not express an opinion as to the ultimate issue to be determined by the trier of fact.

Price v. Commonwealth, 18 Va. App. 760, 764, 446 S.E.2d 642, 644-45 (1994) (citations omitted).

"All that is necessary for a witness to qualify as an expert is that he have 'sufficient knowledge of his subject to give value to his opinion,' and that he be better qualified than the jury to form an inference from the facts." Id. at 86, 341 S.E.2d at 399 (citations omitted). "Any argument that [the expert] lacked experience in the field went to the weight that the trier of fact gave to [his] opinion, not to its admissibility." Id.

Dr. Petrone, an orthopedic surgeon, clearly had sufficient knowledge and experience to render an opinion in this case regarding the use and abuse of steroids, although he indicated that he did not approve of the use of steroids. Any objection to Dr. Petrone's qualification as an expert witness went to the weight to be given his testimony, and not its admissibility. Therefore, the trial court did not err in allowing Dr. Petrone to testify as an expert witness.

"[W]here an accused unsuccessfully objects to evidence which

7

he considers improper and then on his own behalf introduces evidence of the same character, he thereby waives his objection, and we cannot reverse for the alleged error."  Hubbard v. Commonwealth, 234 Va. 1, 9, 413 S.E.2d 875, 879 (1992) (citations omitted).

Additionally, appellant waived any objection to Dr. Petrone's testimony, because he asked his own expert during direct examination about the uses and possible side effects of anabolic steroids, and posed hypothetical questions to his own expert witness.  Furthermore, several witnesses provided the information used by the Commonwealth in its hypothetical questions.  Therefore, the Commonwealth's hypothetical questions were properly based on facts in evidence.  Accordingly, appellant is barred from raising this issue on appeal.

## IV.  SUPPRESSION OF EVIDENCE

### A.  Medical Files

Appellant next contends that the seizure of the medical files from his office violated the Fourth Amendment prohibition against unreasonable searches and seizures, and that the seizure of these files does not fall under the plain view exception to the warrant requirement.

At trial, the evidence demonstrated that the Alexandria police had a valid warrant to search appellant's offices; and that the suspected criminal activity was distribution of Schedule

III and V controlled substances.[1]  Detective Steve Gurdak stated that he had to look through files to find the names of the patients who were listed in the warrant.  He testified that "it appeared that almost any file I opened up had some notation about anabolic steroid use."  The trial court found that "they were looking for unmarked files that had notes and notations that had to do with what Investigator Gurdak reasonably believed to be the distribution of anabolic steroids."  The court found that the plain view doctrine authorized the police action.

In reviewing a trial court's motion to suppress, "[t]he burden is upon [appellant] to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error."  Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980).

"An officer may seize an item in plain view if the officer

---

[1]The police were authorized to search for and seize:

> Any and all records of anabolic steroids dispensed or maintained within the office, any and all records of controlled narcotics dispensed or maintained within the office, any inventory of anabolic steroids or controlled narcotics stored in the office, any papers or other records associated with the distribution of anabolic steroids or controlled narcotics for other than legitimate medical treatments, medical records, files, billing or other records for the following specified patients:  [eighteen names listed].

is lawfully in a position to see the item and it is 'immediately apparent that the item may be evidence of a crime.'" Commonwealth v. Ramsey, 19 Va. App. 300, 303, 450 S.E.2d 775, 777 (1994) (citation omitted).

The police were lawfully in appellant's office, pursuant to a valid search warrant authorizing them to search the office for particular files and evidence of the distribution of anabolic steroids and controlled narcotics. To recover the specifically named patients' files, it was necessary for the officers to search several areas of the office and various drawers and files. During the course of this search, they discovered additional items that were linked to the distribution of steroids and narcotics, including an unusually large supply of anabolic steroids. Thus, the evidence disclosed during a lawful search was in plain view and properly admitted.

### B. Body Wires

Lastly, appellant argues that the trial court erred in denying his motion to suppress the evidence obtained by the use of an undercover body wire. Appellant claims that the officers did not obtain court approval for the interception of oral communications obtained through a body wire; that his conversations were not with co-conspirators; and that he was not discussing the commission of a crime.

"It shall not be a criminal offense under this chapter for a person to intercept a wire, electronic or oral communication,

where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." Code § 19.2-62(B)(2) (emphasis added). "[I]t is not a violation for a person to disclose the contents of a communication . . . while testifying under oath in any criminal proceeding for an offense of extortion, bribery, or felony drug violation or any conspiracy or attempt to commit those offenses." Wilks v. Commonwealth, 217 Va. 885, 887, 234 S.E.2d 250, 251 (1977).

Furthermore, "[however] strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out the colleague is a government agent regularly communicating with the authorities. In these circumstances, 'no interest legitimately protected by the Fourth Amendment is involved,' for that amendment affords no protection to 'a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.'" Id. at 889-90, 234 S.E.2d at 253.

Every participant in the undercover operation who wore a body wire consented to the police intercepting the communications between the person and appellant prior to the conversations taking place. Therefore, we hold that the evidence was properly admissible.

Accordingly, for all the foregoing reasons, we affirm the

11

decisions of the trial court.

                                        <u>Affirmed.</u>