COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bumgardner and Retired Judge Smith[*]
Argued at Salem, Virginia


DONALD ROBERT PILCHER

                                                OPINION BY
v.    Record No. 3218-01-3         JUDGE JAMES W. BENTON, JR.
                                              JULY 15, 2003
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                 Richard C. Pattisall, Judge

          John H. Kennett, Jr. (David A. Bowers, on
          briefs), for appellant.

          Kathleen B. Martin, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     The issue presented by this appeal is whether, under the

facts of this case, the "rape shield law" is an ex post facto

law.[1]  We hold that it is not.

---

     [*] Retired Judge Charles H. Smith, Jr., took part in the
consideration of this case by designation pursuant to Code
§ 17.1-400.

     [1] The following statute is generally referred to as the
"rape shield law":

          A.  In prosecutions under this article,
          general reputation or opinion evidence of
          the complaining witness's unchaste character
          or prior sexual conduct shall not be
          admitted.  Unless the complaining witness
          voluntarily agrees otherwise, evidence of
          specific instances of his or her prior
          sexual conduct shall be admitted only if it
          is relevant and is:

1. Evidence offered to provide an alternative explanation for physical evidence of the offense charged which is introduced by the prosecution, limited to evidence designed to explain the presence of semen, pregnancy, disease, or physical injury to the complaining witness's intimate parts; or

2. Evidence of sexual conduct between the complaining witness and the accused offered to support a contention that the alleged offense was not accomplished by force, threat or intimidation or through the use of the complaining witness's mental incapacity or physical helplessness, provided that the sexual conduct occurred within a period of time reasonably proximate to the offense charged under the circumstances of this case; or

3. Evidence offered to rebut evidence of the complaining witness's prior sexual conduct introduced by the prosecution.

B. Nothing contained in this section shall prohibit the accused from presenting evidence relevant to show that the complaining witness had a motive to fabricate the charge against the accused. If such evidence relates to the past sexual conduct of the complaining witness with a person other than the accused, it shall not be admitted and may not be referred to at any preliminary hearing or trial unless the party offering same files a written notice generally describing the evidence prior to the introduction of any evidence, or the opening statement of either counsel, whichever first occurs, at the preliminary hearing or trial at which the admission of the evidence may be sought.

C. Evidence described in subsections A and B of this section shall not be admitted and may not be referred to at any preliminary hearing or trial until the court first determines the admissibility of that

I.

The grand jury indicted Donald Robert Pilcher for rape of a female child under age sixteen in violation of Code § 18.1-44, carnal knowledge of a female by anus or mouth in violation of Code § 18.1-212, and placing his hand upon a sexual or genital part of a child under the age of fourteen in violation of Code § 18.1-215.  All the events were alleged to have occurred in 1969 under statutes that have since been recodified and amended. In a pretrial pleading and at a pretrial hearing, Pilcher's attorney contended that the rape shield law was ex post facto because "the law of evidence must be the law in effect in 1969."

At trial, one of Pilcher's daughters testified that in October 1969, when she was six years old, Pilcher was in bed

_____

evidence at an evidentiary hearing to be held before the evidence is introduced at such preliminary hearing or trial.  The court shall exclude from the evidentiary hearing all persons except the accused, the complaining witness, other necessary witnesses, and required court personnel.  If the court determines that the evidence meets the requirements of subsections A and B of this section, it shall be admissible before the judge or jury trying the case in the ordinary course of the preliminary hearing or trial.  If the court initially determines that the evidence is inadmissible, but new information is discovered during the course of the preliminary hearing or trial which may make such evidence admissible, the court shall determine in an evidentiary hearing whether such evidence is admissible.

Code § 18.2-67.7.

with her and touched between her legs.  While playing with her, he "put his penis inside her," said he was only trying to "teach" her what girls do, and told her the incident was their secret.  She also testified that a few weeks prior to this incident, Pilcher asked her to go to the basement with him.  There, he touched her vaginal area and inserted his fingers in her.

During cross-examination of the daughter, the following incidents occurred:

> Q:  And, as a matter of fact, your hymen was broken when you had sexual relations with Tom . . .
>
> [PROSECUTOR]:  Objection, Your Honor.
>
> [DEFENSE ATTORNEY]:  I have a right to show that she is lying.
>
> [PROSECUTOR]:  This is absolutely inadmissible and [he] knows it.  Judge, the Rape Shield Statute is very clear on this issue.  No motion has been filed and no hearing has been had.
>
> [JUDGE]:  I sustain the objection.
>
> [DEFENSE ATTORNEY]:  You mean I can't ask her about when she did first have sexual relations, and she is testifying that she had them with my man?  I don't understand the nature of the objection.
>
> [JUDGE]:  . . . you understand the Rape Shield law.
>
> [DEFENSE ATTORNEY]:  Well, that doesn't apply here.  This was before the Rape Shield law.
>
> [JUDGE]:  It is procedure now.

                *     *     *     *     *     *     *

          [JUDGE]:  The motion is sustained. . . .
          You can't get into this area.

     At the conclusion of the evidence the trial judge convicted
Pilcher of rape of a child and of putting his hands against the
sexual parts of a child, as charged in the indictments.  The
judge acquitted Pilcher of the charge of carnal knowledge.

                                  II.

     The Constitution of the United States, Article 1, § 10, and
the Constitution of Virginia, Article 1, § 9, prohibit the
General Assembly from enacting ex post facto laws.  The United
States Supreme Court has traditionally recognized four categories
of ex post facto criminal laws:

          1st.  Every law that makes an action done
          before the passing of the law, and which was
          innocent when done, criminal; and punishes
          such action.  2d.  Every law that aggravates
          a crime, or makes it greater than it was
          when committed.  3d.  Every law that changes
          the punishment, and inflicts a greater
          punishment, than the law annexed to the
          crime, when committed.  4th.  Every law that
          alters the legal rules of evidence, and
          receives less, or different, testimony, then
          the law required at the time of the
          commission of the offence, in order to
          convict the offender.

Calder v. Bull, 3 U.S. 386, 390 (1798).  See also Collins v.
Youngblood, 497 U.S. 37, 42 (1990).

     "It is equally well settled, however, that '[t]he inhibition
upon the passage of ex post facto laws does not give a
[defendant] a right to be tried, in all respects, by the law in
force when the crime charged was committed.'"  Dobbert v.
Florida, 432 U.S. 282, 293 (1977) (citations omitted).  In

                                - 5 -

addition, the Court has held that no ex post facto violation occurs if the change effected by the law is merely procedural and does "not increase the punishment nor change the ingredients of the offence or the ultimate facts necessary to establish guilt." Hopt v. Utah, 110 U.S. 574, 590 (1884). For example, in Dobbert, the Supreme Court cited the following example of a procedural change that was not considered ex post facto even though it worked to the disadvantage of a defendant:

> [I]n Hopt v. Utah, 110 U.S. 574 (1884), as of the date of the alleged homicide a convicted felon could not have been called as a witness. Subsequent to that date, but prior to the trial of the case, this law was changed; a convicted felon was called to the stand and testified, implicating Hopt in the crime charged against him. Even though this change in the law obviously had a detrimental impact upon the defendant, the Court found that the law was not ex post facto because it neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided greater punishment, nor changed the proof necessary to convict. Id., at 589.

Dobbert, 432 U.S. at 293. In other words, although it is possible for retroactive application of a procedural law to violate the ex post facto clause, a violation only occurs when one of the four recognized categories of ex post facto law is implicated. Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001).

III.

At trial, Pilcher's attorney argued that the "rape shield" law was an _ex_ _post_ _facto_ prohibition against his use of impeachment evidence. He also argued that the statutory requirements -- that the party offering evidence file a written notice describing the evidence and that the judge conduct an evidentiary hearing -- change the rules of evidence. Thus, Pilcher contends that application of the rape shield law in this prosecution was _ex_ _post_ _facto_ because it changed the rules of evidence in effect in 1969.[2] He also contends that, were it not for the rape shield law, he could have proved his daughter did not have sexual intercourse until she was sixteen and, thus, lied at trial.

In pertinent part, the pretrial discussions concerning these issues included the following:

> [PILCHER'S ATTORNEY]: [W]e are talking about rules of evidence, if you can show that someone else had sexual intercourse with this [child] and not [Pilcher], then that shows she is lying, and the case is Dodson versus Commonwealth[, 170 Va. 630, 196 S.E. 623 (1938)]. It is a case in Virginia under the old law which deals with the fact that you can show it for credibility, even though it is not an issue, and . . . I mean it otherwise has to be relevant and admissible, but to the extent it is relevant and admissible, this Rape Shield Statute seems to make it excludable. It is a defense that a person has, and it is

---

[2] We note that Pilcher makes no argument that the statute is not applicable because these offenses are not "prosecutions under this article," Code § 18.2-67.7. Thus, for purposes of this opinion we assume Code § 18.2-67.7, if not _ex_ _post_ _facto_, applies to this prosecution.

a defense that he would have had, if . . . otherwise . . . it [is] admissible, that they are trying to pass a new law to exclude, and that is what the ex post facto says you can't.

So I mean what I introduce may or may not be admissible at the time of the trial, . . . we don't even know what is coming up. I mean they don't really know what we are going to ask her on cross examination . . . until it happens, but the thing is that from the point of view of the Rape Shield law, that has no applicability; that is all I am saying. The Rape Shield law is . . .

[THE COURT]: Well, what is it that you think you are going to ask her that is going to allow you to use testimony of somebody else?

[PILCHER'S ATTORNEY]: I am not so sure, but other sexual encounters not with [Pilcher], that he didn't ever have sexual intercourse with her. I contend [Pilcher] never had sexual intercourse with her, ever.

*     *     *     *     *     *     *

And some of the questions could, maybe won't, but could go into other sexual encounters with other people, and that is admissible under Dodson . . . even though under fifteen and so forth there is no consent. That is not an issue, but you can still show it for credibility, and that case is right smack on point and holds that.

My only issue here is that the Rape Shield Statute wouldn't bar me if I am otherwise going to use it, and that is just clear. It is on all fours, and that other case holds that.

[PROSECUTOR]: Well, Judge, I absolutely disagree. I think the Rape Shield Statute, it does not preclude the production of that evidence or the admission of that evidence. What it does is it requires the Defendant to have a hearing ahead of time so that the

Court can determine what the evidence is before it is put in front of a Jury. The effect of it is to attempt to avoid mistrials and to attempt to avoid Juries from hearing evidence which is inadmissible . . . . It is a pre-screening device, effectively, particularly as to sexual relations with third parties. The statute specifically made those inadmissible where they were, according to the Court in Winfield [v. Commonwealth, 225 Va. 211, 301 S.E.2d 15, (1983),] inadmissible prior to that. . . .

[THE COURT]: You all are taking the opposite positions, if I understand it. You are saying that with the statute he can get it in, and he says with the statute he can't get it in.

[PROSECUTOR]: With the statute he can get it in, but he has to make a showing of relevance in a hearing prior to the case.

[PILCHER'S ATTORNEY]: Well, that still changes the rule of evidence.

[PROSECUTOR]: What I am trying to avoid is a situation in which the witness is asked questions about her prior sexual history without having any idea whether it is objectionable because there has been no hearing ahead of time.

[THE COURT]: Well, what we will do, you will put her on on direct, see what she says, and we will take a recess, see what you are going to ask her, and then I will rule on whether you can ask her or you can't ask her.

[PILCHER'S ATTORNEY]: . . . I am just trying to get this straight, insofar as the pre-trial argument is concerned, that is an evidentiary procedure that we didn't know, we didn't use to have to disclose that, what we are going to do at the trial under the old rule. That changes the rule of evidence. . . .

In Carmell v. Texas, 529 U.S. 513, 529 (2000), the Supreme Court held that a law was ex post facto when it "changed the quantum of evidence necessary to sustain a conviction . . . [such that] under the new law, petitioner could be (and was) convicted on the victim's testimony alone, without any corroborating evidence."  Reversing the conviction, the Court ruled that the Texas statute, which changed the law, was "a sufficiency of the evidence rule . . . [and] does not merely 'regulat[e] . . . the mode in which the facts constituting guilt may be placed before the jury.'"  529 U.S. at 545 (citation omitted).  In so ruling, however, the Supreme Court held that "[t]he issue of the admissibility of evidence is simply different from the question whether the properly admitted evidence is sufficient to convict the defendant.  Evidence admissibility rules do not go to the general issue of guilt . . . ."  592 U.S. at 546.  "[I]t is now well settled that statutory changes in the mode of trial or the rules of evidence, which do not deprive the accused of a defense and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited."  Beazell v. Ohio, 269 U.S. 167, 170 (1925).

As the Supreme Court of Virginia has noted, the "rape shield" law was adopted to "limit or prohibit the admission of general reputation evidence as to the prior unchastity of the complaining witness, but . . . [to] permit the introduction of evidence of specific acts of sexual conduct between the

complaining witness and third persons in carefully limited circumstances." Winfield, 225 Va. at 218, 301 S.E.2d at 19. Indeed, the Court further observed that the "law gives a defendant access for the first time to far more probative evidence: specific prior sexual conduct with third persons, if it is relevant for the purposes set forth in Code § 18.2-67.7." Winfield, 225 Va. at 220, 301 S.E.2d at 20. Thus, to the extent that Pilcher contends the statutory change affects the rules of evidence, we note that the United States Supreme Court also has held that "the prescribing of different modes or procedure . . . , leaving untouched all the substantial protections with which the existing law surrounds the person accused of crime, are not considered within the constitutional inhibition." Duncan v. Missouri, 152 U.S. 377, 382-83 (1894). Likewise, "[s]o far as mere modes of procedure are concerned a party has no more right, in a criminal than in a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place." Mallett v. North Carolina, 181 U.S. 589, 596-97 (1901) (citation omitted).

Applying these ex post facto principles to this case, we hold that Pilcher has not demonstrated that the statute affected his substantive rights, and we further hold that it is not an ex post facto law as applied in this case. In so holding, we note that courts of other jurisdictions, when confronted with similar

ex post facto arguments regarding rape shield statutes, have reached the same result.  See Turley v. State, 356 So.2d 1238, 1243-44 (Ala. App. 1978) (holding that a rape shield statute was not ex post facto when it barred evidence of a prior sexual relationship that was admissible before enactment of the statute); People v. Dorff, 396 N.E.2d 827 (Ill. App. 1979) (holding that a statute is not ex post facto when it created an "alteration in rules of evidence . . . [, which] served only to prevent use of certain evidence relating to the alleged victim's credibility, and had no bearing upon evidence relating to the crime itself"); Finney v. State, 385 N.E.2d 477, 480-81 (Ind. App. 1979) (holding that the "rape shield statute affects the use of character evidence to impeach witnesses . . . and is therefore procedural in nature").

We further note that in response to Pilcher's pretrial argument, the prosecutor suggested "that the rape shield statute . . . does not preclude . . . the admission of that evidence . . . [if] he has [made] a showing of relevance in a hearing prior to the case."  Recognizing that Pilcher's attorney and the prosecutor voiced "opposite positions on this matter," the trial judge ruled that after the witness testified on direct examination, he would consider at "a recess . . . what [Pilcher's attorney is] going to ask her, and then . . . will rule on whether [Pilcher's attorney] can ask her" that line of questions.  The record reflects that Pilcher did not request a

recess and did not make the requisite showing of relevance.

We explicitly do not decide whether the evidence Pilcher wanted to introduce was barred by Code § 18.2-67.7 or fell within the rules announced in Dodson.  That issue is not before us.  Although it is unclear whether the trial judge would have admitted the evidence had Pilcher requested a preliminary hearing, the absence of such a hearing is the most direct cause of the exclusion.  Indeed, Pilcher specifically notes in his brief that, "[w]hile an argument can be made that the sustaining of the objection on cross-examining the prosecutrix denied Pilcher the constitutional right to present evidence in his own behalf, the Court need not consider that issue."  Thus, despite Pilcher's suggestion that Code § 18.2-67.7 barred the evidence, the real cause of the exclusion in this case was his failure to follow the statute's procedures.

In summary, we hold that the procedural change wrought by Code § 18.2-67.7 does not implicate the prohibition on ex post facto laws.  As the Supreme Court held long ago,

> alterations which do not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt . . . relate to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure.

Hopt, 110 U.S. at 590 (emphasis added).  For these reasons, we affirm the convictions.

Affirmed.