COURT OF APPEALS OF VIRGINIA

Present:   Judges Clements, Haley and Beales
Argued at Richmond, Virginia


JOHN WELFORD CARPENTER, JR.
                                                          OPINION BY
v.      Record No. 1376-06-2                    JUDGE JAMES W. HALEY, JR.
                                                        DECEMBER 27, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GREENE COUNTY
Daniel R. Bouton, Judge

(Michael T. Hemenway, on brief), for appellant.  Appellant
submitting on brief.

Karri B. Atwood, Assistant Attorney General (Robert  F.
McDonnell, Attorney General, on brief), for appellee.


        John Welford Carpenter, Jr. ("appellant") appeals his convictions for rape and forcible

sodomy.  He appeals two decisions of the trial court.  At his trial, the prosecution introduced into

evidence testimony of appellant's spouse and a tape recording of a conversation between

appellant and his spouse.  There is no dispute that the admission of both pieces of evidence

violated the provisions of the evidentiary privilege preventing the disclosure of certain

confidential marital communications (Code § 19.2-271.2 and Code § 8.01-398) effective at the

time of the communication and tape recording.  However, the evidence did not violate the

amended statutory language effective at the time of appellant's trial.  Appellant argues that the

trial court erred in admitting this evidence.  Appellant also contends that the trial court erred in

finding the evidence sufficient for his convictions.  We disagree, and affirm the judgment of the

trial court.

FACTS

Appellant was found guilty after a bench trial on January 19, 2006. The evidence at trial, in the light most favorable to the Commonwealth, involved three incidents of sexual assault by the defendant on his stepdaughter.

In the summer of 1992, appellant's teenage stepdaughter lived with her mother and appellant. One morning, appellant entered her bedroom, pulled her out of bed by her arm, and had sexual intercourse with her on the floor. Appellant told the victim not to tell anyone about what had happened or he would kill her mother.

In the evening, about two or three months later, appellant again came to his stepdaughter's bedroom. He pushed her onto the bed, took off her shorts, placed his mouth on her vagina, and engaged in oral sex. After that, appellant masturbated and left the room.

On a summer evening in 1993, appellant went to his stepdaughter's bedroom once again. He pushed her onto the bed, took her pants off, and had sexual intercourse with her. After he was finished, appellant told her not to tell her boyfriend or anyone else, or else he would kill her mother.

Eleven years later, on October 14, 2004, the victim's mother, Helen Carpenter, was still married to appellant. She discovered a check that he had written to her daughter. The check made her suspicious; so she called her daughter and discussed the matter with her. Her daughter told her what had happened years before. Ms. Carpenter then confronted appellant, told him that he had raped her daughter, and asked him to move out of their house. When his wife accused him of the rape, appellant started crying and told her that it had not been easy for him to live with what had happened.

Ms. Carpenter called the police and spoke to Investigator Leslie Cash of the Greene County Sheriff's Office. They planned that Ms. Carpenter would engage her husband in

conversation near a hidden tape-recorder, hoping to obtain a confession. On December 14, 2004, Ms. Carpenter purchased a tape recorder, invited her husband to her house, and turned on the tape recorder just before appellant came inside. Their subsequent conversation was preserved on the tape and included a number of incriminating statements by appellant. Specifically, appellant said, "Lord, please forgive me for raping [the victim]," and "Helen, please forgive me." Ms. Carpenter gave the tape to Investigator Cash.

On the day of the tape recording, the only limitation on the privilege of a spouse to refuse to disclose or prevent someone else from disclosing private marital communications was that the privilege did not apply "in those instances where the law of this Commonwealth confers upon a spouse the right of action against the other spouse." Code § 8.01-398 (1977), amended by 2005 Va. Acts, ch. 809. At the same time the statute governing the admission of the testimony of husband and wife in a criminal case made such testimony "subject to the exception stated in Code § 8.01-398." Code § 19.2-271.2 (1995), amended by 2005 Va. Acts, ch. 809.

On July 1, 2005, after the tape recording of the Carpenters' conversation but before appellant's rape trial, amendments to Code § 19.2-271.2 and Code § 8.01-398 became effective. These amendments restrict the application of Virginia's confidential marital communications evidentiary privilege. The legislature added the following language: "This privilege may not be asserted in any proceeding in which the spouses are adverse parties, or in which either spouse is charged with a crime or tort against the person or property of the other or against the minor child of either spouse." Code § 8.01-398 (as amended). The legislature also removed the portion of Code § 19.2-271.2 which had previously made the testimony of a husband or wife in a criminal case subject to the exceptions stated in Code § 8.01-398. Code § 19.2-271.2 (as amended). Both before and after the amendment, Code § 19.2-271.2 included the language: "but neither shall be compelled to be called as a witness against the other except (i) in the case of a prosecution for an

offense committed . . . against the minor child of either . . . ."[1]  The trial court applied the

amended provisions of the marital communications statutes to appellant's trial of January 19,

2006[2] and admitted into evidence the tape recording and Ms. Carpenter's testimony regarding

her husband's confession.

---

[1] The fact that Ms. Carpenter's testimony was not "compelled" does not decide the question before us because the pre-amendment version of Code § 19.2-271.2 was expressly subject to the exceptions stated in Code § 8.01-398, which, before the 2005 amendments, provided that "neither husband nor wife shall, without the consent of the other, be examined in any action as to any communication privately made by one to the other while married, nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage subsisted."

[2] By the time of trial the effective language of Code § 8.01-398 was:

> In any civil proceeding, a person has the privilege to refuse to disclose, and to prevent anyone else from disclosing, any confidential communication between his spouse and him during their marriage, regardless of whether he is married to that spouse at the time he objects to the disclosure.  This privilege may not be asserted in any proceeding in which the spouses are adverse parties, or in which either spouse is charged with a crime or tort against the person or property of the other or against the minor child of either spouse.  For the purposes of this section, "confidential communication" means a communication made privately by a person to his spouse that is not intended for disclosure to any other person.

The effective language of Code § 19.2-271.2 was:

> In criminal cases, husband and wife shall be allowed, and, subject to the rules of evidence governing other witnesses, may be compelled to testify in behalf of each other, but neither shall be compelled to be called as a witness against the other, except (i) in the case of a prosecution for an offense committed by one against the other, against a minor child of either, or against the property of either . . .

> Except in the prosecution for a criminal offense as set forth in (i), (ii) or (iii) above, in any criminal proceeding, a person has a privilege to refuse to disclose, and to prevent anyone else from disclosing, any confidential communication between his spouse and him during their marriage, regardless of whether he is married to that spouse at the time he objects to disclosure.  For the purposes

- 4 -

ANALYSIS

A) Ex Post Facto Clause

Appellant argues that the trial court's retroactive application of Virginia's marital communications privilege exceptions to his case violated the ex post facto clauses of the United States and Virginia Constitutions. The types of laws forbidden by the Ex Post Facto Clause were defined by Justice Chase in Calder v. Bull, 3 U.S. 386 (1798).

> 1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates* a *crime* or makes it *greater* than it was when committed. 3d. Every law that changes the *punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less, or different testimony, than the law required at the time of the commission of the offence [sic], *in order to convict the offender*.

Id. at 390. The United States Supreme Court has since determined that laws that do not fit into any of Justice Chase's four categories are not forbidden by the Ex Post Facto Clause. Collins v. Youngblood, 497 U.S. 37, 46 (1990); Carmell v. Texas, 529 U.S. 513, 539 (2000); Stogner v. California, 539 U.S. 607, 611 (2003).

Citing Carmell and Stogner, appellant argues that the marital privilege amendments, as applied to him, fit into Calder's fourth category of ex post facto laws: laws that alter the legal rules of evidence and receive less, or different testimony, than the law required at the time of the offense in order to convict the offender. Calder, 3 U.S. at 390. The Ex Post Facto Clause does not, "'give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed.'" Dobbert v. Florida, 432 U.S. 282, 293 (1977) (quoting Gibson v.

---

of this section, "confidential communication" means a communication made privately by a person to his spouse that is not intended for disclosure to any other person.

Mississippi, 162 U.S. 565, 590 (1896)). Instead the cases interpreting the Ex Post Facto Clause draw a distinction between the retroactive application of laws that change the legal sufficiency of the evidence required to convict and the retroactive application of laws that merely concern the competency or admissibility of evidence. Carmell, 529 U.S. at 518 n.2. See Thompson v. Missouri, 171 U.S. 380, 388 (1898) ("We cannot adjudge that the accused had any vested right in the rule of evidence which obtained prior to the passage of the Missouri statute . . . .").

In Carmell, the United States Supreme Court held unconstitutional the retroactive application of a statute that required corroboration of certain sexual offenses if the victim was eighteen years old or older. At the time of the relevant offenses, but not at the time of the defendant's trial, the statute required evidence of corroboration unless the victim was less than fourteen years old. At the time of the offenses discussed in the Carmell opinion, the victim was between fourteen and eighteen and the law had not yet dispensed with the corroboration requirement for a victim whose age fell within that range. 529 U.S. at 518. The Court held the application of the amended law was unconstitutional because it changed the quantum of evidence that was legally sufficient for a conviction. Id. at 530. Emphasizing that, before the new law, the defendant would have been legally entitled to a judgment of acquittal in the absence of corroboration, the Court carefully distinguished retroactive application of changes to the legal sufficiency of the evidence from retroactive applications of changes in the ordinary rules of evidence. "More crucially, such rules, by simply permitting evidence to be admitted at trial, do not at all subvert the presumption of innocence, because they do not concern whether the admissible evidence is sufficient to overcome that presumption." Id. at 533.

Virginia decisions also make the distinction between changes to the ordinary rules of evidence and changes to rules affecting the sufficiency of the evidence needed to obtain a conviction. Culbertson v. Commonwealth, 137 Va. 752, 755, 119 S.E. 87, 87 (1923);

- 6 -

McClain v. Commonwealth, 189 Va. 847, 858, 55 S.E.2d 49, 54-55 (1949); Pilcher v.

Commonwealth, 41 Va. App. 158, 167, 583 S.E.2d 70, 74 (2003). The statement of the Supreme

Court of Virginia that Code § 19.2-271.2 is not "a penal statute that must be strictly construed

against the Commonwealth," Brown v. Commonwealth, 223 Va. 601, 606, 292 S.E.2d 319, 322

(1982), suggests that the marital communications privilege falls into the former category and,

therefore, does not offend the Ex Post Facto Clause.

The amended law in this case did not change the quantum of evidence legally sufficient

for a conviction for either rape or forcible sodomy. Unlike the statute in Carmell, the

uncorroborated testimony of the victim, if believed beyond a reasonable doubt by the finder of

fact, was legally sufficient for a conviction both before, and after, the General Assembly changed

the marital communication privilege statutes. In deciding that the trial judge did not violate the

Ex Post Facto Clause in admitting the tape recording into evidence, we find persuasive the

reasoning of the Court of Appeals of Michigan which has previously decided this very question.

People v. Dolph-Hostetter, 664 N.W.2d 254 (Mich. Ct. App. 2003).

In Dolph-Hostetter, the Court of Appeals of Michigan addressed the question of whether

an amendment to the statute defining a similar confidential marital communications privilege

could be applied retroactively. Id. at 256. The defendant was tried for murder, and her former

husband, who was married to the defendant at the time of the murder, entered a guilty plea to

second-degree murder in exchange for his testimony against the defendant. Id. at 255-56. An

amendment to the applicable marital privilege statute became effective on October 1, 2000,

between the 1996 shooting with which defendant was charged and the time of her trial. Id. at

255. Under the amended law, the decision of whether to invoke the privilege belonged to the

testifying spouse, not to the defendant. Id. The Court of Appeals of Michigan held that the

retroactive application of the amended statute did not violate the Ex Post Facto Clause.

- 7 -

> The amendment at issue in the instant case is simply not analogous to the amendment at issue in Carmell. Indeed, the amendment to the marital-communications privilege does not alter the quantum of evidence necessary to convict a person of any crimes; it simply affects what evidence may be introduced at a criminal trial.

Id. at 258.

Appellant also argues that the presence of "the oath of the wife against the husband" among Justice Chase's examples of ex post facto law in Calder suggests that the retroactive application of amendments to the marital privilege violates the Ex Post Facto Clause. Footnote 6 of the Michigan court's opinion in Dolph-Hostetter persuasively refutes appellant's argument.

> The court was referring to a portion of Calder, supra at 389, in which Justice Chase noted that the prohibition against ex post facto laws was initiated, in part, because the British Parliament in the past had unfairly "violated the rules of evidence (to supply a deficiency of legal proof) by admitting one witness, when the existing law required two, by receiving evidence without oath, or the oath of the wife against the husband; or other testimony, which the courts of justice would not admit . . . ." Justice Chase cited, in a footnote, the case of Sir John Fenwick in 1696. At the time of Sir John Fenwick, marital privilege as we know it did not exist; instead, at common law an accused was disqualified from being a witness because of the doctrine that a husband and wife were one person. Justice Chase's ancient statement thus related to a different situation and, aside from its nature as dictum, does not serve as a basis for overcoming the clear implications of Carmell.

Id. at 261 n.6 (citation omitted). We hold that the admission of the tape recording and appellant's wife's related testimony did not violate the ex post facto clauses of the United States and Virginia Constitutions.

### (B) Due Process

Appellant also argues that the retroactive application of the newly amended marital communications privilege exceptions to his case violated his constitutional due process rights. Yet Rogers v. Tenneessee, 532 U.S. 451 (2001), cited by appellant, suggests the opposite. In Rogers, the petitioner argued that his murder conviction violated due process and should be

reversed because a decision of the Supreme Court of Tennessee, eliminating that state's common law rule barring murder prosecutions if the victim died more than one year and one day after the act of the accused and applying this decision retroactively, would have been an unconstitutional ex post facto law if the legislature had repealed the same common law rule by statute. The majority opinion makes no attempt to deny that the Tennessee court's new judicial interpretation, when applied retroactively, did operate like an ex post facto law and would have been unconstitutional if it had been enacted by legislation and applied retroactively. Rogers only held that this did not violate due process. "Contrary to petitioner's suggestion, nowhere in the opinion did we go so far as to incorporate jot-for-jot the specific categories of Calder into due process limitations on the retroactive application of judicial decisions." Id. at 459. Thus, whatever protection against retroactive legislative acts the Due Process Clause provides, the clear implication of Rogers is that this protection is no greater than the protection provided by the Ex Post Facto Clause. Because the ex post facto question is governed by the Calder categories, it follows from our conclusion that appellant's case does not fit into any of those categories that these statutes' retroactive application did not violate the Due Process Clause either.

Appellant argues that his time honored privacy interest in his confidential marital communications and his detrimental reliance on a law protecting his expectations of privacy in those communications require the reversal of his convictions. Similar concerns of marital privacy and detrimental reliance were present in Trammel v. United States, 445 U.S. 40 (1980). However these concerns did not prevent the United States Supreme Court from overruling its previous interpretation of the federal spousal privilege established in Hawkins v. United States, 358 U.S. 74 (1958), and retroactively applying its new, more limited, interpretation of the privilege in order to affirm petitioner's conviction. Trammel, 445 U.S. at 53.

Moreover, there seems to be no authority in the cases suggesting the existence of a constitutional due process right to confidential marital communications. "The privilege not to testify against a spouse is a common law, and not a constitutional one." United States v. Doe, 478 F.2d 194, 195 (1st Cir. 1973). "Lefkowitz finally contends that these marital privileges are somehow grounded in various constitutional amendments and implement a constitutionally protected right of marital privacy. These privileges, however, do not have constitutional underpinnings." United States v. Lefkowitz, 618 F.2d 1313, 1319 (9th Cir. 1980). "As for LaRoche's asserted constitutional claim, we see no persuasive reason to extend the right of privacy, based as it is on 'penumbras and emanations' of other more explicit constitutional rights, to evidentiary matters protecting marital relationships, long thought to be uniquely within the regulatory province of the individual states." LaRoche v. Wainright, 599 F.2d 722, 726 (5th Cir. 1979). We therefore hold that the admission into evidence of Ms. Carpenter's testimony and the tape recording did not violate appellant's due process rights.

(C) Code § 19.2-62

Appellant argues that the admission of the disputed tape recording violated Code § 19.2-62, which forbids interception and disclosure of certain electronic, wire or oral communications. He concedes that this statute does not forbid the interception if one of the parties to the communication consents to the recording or makes the recording. Of course, Ms. Carpenter's conduct in this case seems to fit either or both of these exceptions. Appellant's argument thus depends on his suggested application of the ancient legal fiction that a husband and wife constitute a single legal entity to Virginia's wiretap statutes.

We need not reach appellant's claim regarding the unity of the spouses in order to resolve the issue of the application of the wiretap statute in light of controlling precedent analyzing the threshold question of whether appellant's statements constitute an "oral communication" within

- 10 -

the meaning of Code § 19.2-61.  A defendant's statement confiding incriminating information to a confidential police informer does not fit the definition of an "oral communication" implicating the wiretap statutes.  Cogdill v. Commonwealth, 219 Va. 272, 276-77, 247 S.E.2d 392, 395 (1978); Wilks v. Commonwealth, 217 Va. 885, 234 S.E.2d 250 (1977).

> Because, under the circumstances, the defendant did not have a justifiable expectation of noninterception of his colloquy with Hockaday and Cunningham, we hold that the conversation does not fall within the definition of an "oral communication" protected by Chapter 6 of Title 19.2 of the Code of Virginia.  Accordingly, the trial court did not err in admitting into evidence the tape recording of the conversation.

Wilks, 217 Va. at 890, 234 S.E.2d at 253.  Because the record shows no meaningful difference between the recordings of the conversations in Wilks and Cogdill and the recording of the conversation admitted at appellant's trial, we hold that the trial court's ruling did not violate Code §19.2-62.

### (D) The Fourth Amendment

Appellant also argues that his wife's recording of his statements violated his right under the Fourth Amendment to be free from unreasonable searches and seizures because Ms. Carpenter was acting as an agent of the police when she made the recording and that her tape recording of appellant's statements therefore required a court order pursuant to Code §§ 19.2-66 and 19.2-68.  A tape recording made in violation of these statutes, the argument continues, was not reasonable under the Fourth Amendment because a reasonable police investigation would have carefully obeyed state law regulating the interception and recording of oral communications.  Assuming, without deciding, that Ms. Carpenter was acting as an agent of the police, appellant's argument depends on the premise that his statements were an "oral communication" protected against unauthorized interception or disclosure by Chapter 6 of Title 19.2 of the Code.  Appellant's statements were not an "oral communication" within the meaning

- 11 -

of the wiretap statutes for the reasons already mentioned in Part C of this opinion. While appellant's brief does not offer an additional Fourth Amendment argument, beyond his mistaken claim that the recording violated the wiretapping statutes, we note that the United States Supreme Court has held that a person has no constitutionally protected expectation that a person with whom he converses will not reveal the substance of that conversation to the police. United States v. White, 401 U.S. 745, 751 (1971). We therefore hold that the introduction of the recording into evidence at appellant's trial did not violate the Fourth Amendment.

(E) The Fifth Amendment

Appellant also argues that his wife's testimony against him violated his Fifth Amendment privilege against compelled self-incrimination because of the ancient common law understanding that a husband and wife are a single person. We disagree. Appellant's argument contains no authority in the text of the Fifth Amendment or the cases interpreting it for the proposition that husband and wife are the same for the purposes of the Fifth Amendment. Moreover, the unity of the spouses has not been cited favorably on the rare occasions in which the concept has been mentioned by recent decisions.

> Recent cases from this Court have underscored the ever-increasing separateness and independence accorded women in this Commonwealth. In Stewart v. Commonwealth, 219 Va. 887, 252 S.E.2d 329 (1979), we rejected the argument that the legal fiction of unity between husband and wife was a defense to a charge of grand larceny against the husband, for stealing his wife's property.

Weishaupt v. Commonwealth, 227 Va. 389, 400, 315 S.E.2d 847, 853 (1984).

Finally, if appellant's understanding of the Fifth Amendment were correct, no spouse could ever testify against the other spouse in any case, for any reason. Any statutory marital privileges would be unnecessary, and any statutory exceptions would be unconstitutional. Appellant's Fifth Amendment argument has no support in the cases and is inconsistent with the cases cited in Part B of this opinion, stating that the marital privilege is a creation of statute and

the common law, with no basis in the Constitution. Appellant's position is also inconsistent with the principle that, "The Fifth Amendment privilege against self-incrimination is a personal privilege of the testifying witness and not the defendant who is being tried but is not testifying." Cunningham v. Commonwealth, 2 Va. App. 358, 367, 344 S.E.2d 389, 394 (1986) (Benton, J., concurring) (citing Rogers v. United States, 340 U.S. 367, 371 (1951)). Accordingly, we hold that Ms. Carpenter's testimony did not violate her husband's Fifth Amendment privilege.

(F) Sufficiency of the Evidence

Appellant maintains that the evidence was not sufficient to support his convictions for rape and forcible sodomy. "When examining a challenge to the sufficiency of the evidence, an appellate court must review the evidence in the light most favorable to the prevailing party at trial and consider any reasonable inferences from the facts proved." Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005). The findings of fact of a judge at a bench trial are given the same weight as a jury verdict. Richards v. Commonwealth, 8 Va. App. 612, 613, 383 S.E.2d 268, 269 (1989). We ask ourselves whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Hoambrecker v. City of Lynchburg, 13 Va. App. 511, 514, 412 S.E.2d 729, 731 (1992).

Citing Sabol v. Commonwealth, 37 Va. App. 9, 553 S.E.2d 533 (2001), appellant argues there was insufficient evidence from which the trial judge could have concluded beyond a reasonable doubt that appellant's sexual intercourse with the victim was accomplished by force, threat or intimidation as required by Code §§ 18.2-61 and 18.2-67.1. Sabol is an especially instructive case because it analyzes the force, threat or intimidation element with respect to two separate rape convictions, affirming one and reversing the other. The conviction affirmed in Sabol was supported by evidence that the defendant, the victim's stepfather, called the victim

into the house, led her down the hallway by the hand, pushed her into a bedroom, got on top her, and put his penis into her vagina. Id. at 14, 553 S.E.2d at 535-36.

> Evidence that appellant pushed L.D. down the hall toward the bedroom to accomplish the fall 1990 rape was sufficient proof of the use of force to overcome her will. As the trial court found when ruling on the motion to strike:
>
> If you consider the evidence in the light most favorable to the Commonwealth in this case, you have non-consensual acts that were committed against the victim, and force is present even though it may not be so great as to cause bodily harm. She testified that [during] one of the incidents he was pushing her down the hallway against her will towards the bedroom, that none of it was done with her consent, that she held her body in such a way that he could not get as close to her as he otherwise could, and that she demanded that he not do it . . . .
>
> The record here supports the jury's finding of guilt on one warrant. While appellant pushed L.D. down the hall, he said she "had to take care of him." Although L.D. expressed her hatred of him, appellant ignored her statements and continued to push her toward the bedroom and the bed. This evidence supports a finding that appellant used force to overcome the victim's will. We cannot say that the "jury's verdict . . . is plainly wrong or without evidence to support it."

Id. at 17, 553 S.E.2d at 537 (citation omitted). The evidence supporting the rape conviction reversed by the Sabol decision was that the defendant threatened to revoke the victim's privilege to use the family car and to withhold money from her if she did not "take care of him." Id. at 14-15, 553 S.E.2d at 535-36. She walked to the bedroom by herself and undressed herself. Id. at 17, 553 S.E.2d at 537.

The evidence in this record, particularly the presence of pushing and shoving in the victim's account of all three incidents, is more similar to the evidence supporting the conviction that this Court affirmed in Sabol. Viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence of force to support appellant's rape and forcible sodomy convictions.

- 14 -

The remainder of appellant's arguments on the sufficiency question relate to the credibility of the witnesses. It is within the province of the trial judge, as the finder of fact to assess the credibility of the witnesses and the weight to be given to their testimony. Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). In this case, the trial judge found the victim's testimony to be credible. The trial court rejected the defendant's testimony as unworthy of belief and found his explanations of his recorded statements to be particularly lacking in credibility. We cannot say, as a matter of law, that the trial court was wrong in making this assessment of the credibility of the witnesses and the weight of the evidence.

Accordingly, we affirm the judgment of the trial court.

Affirmed.