COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Humphreys, Chaney and Lorish
Argued at Virginia Beach, Virginia


JAMES JESUS MONTGOMERY

                                                    OPINION BY
v.        Record No. 1095-21-1              JUDGE ROBERT J. HUMPHREYS
                                                    JULY 26, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Michael A. Gaten, Judge

Charles E. Haden for appellant.

Robin M. Nagel, Assistant Attorney General (Jason S. Miyares,
Attorney General, on briefs), for appellee.


Following a conditional guilty plea for possession of marijuana with intent to distribute in

violation of Code § 18.2-248.1, James Montgomery was sentenced in the City of Hampton

Circuit Court to five years' incarceration, with all five years suspended.  Montgomery retained

the right to appeal the circuit court's denial of a motion to suppress the marijuana seized from his

vehicle during a traffic stop, which he now does.  Montgomery argues that the circuit court erred

by ruling that the statutory exclusionary rule found in former Code § 18.2-250.1(F)'s prohibition

on so-called "plain smell" marijuana searches did not apply to exclude the evidence found in the

search of his vehicle. [1]

_____

    [1] Effective July 1, 2021, as part of broader marijuana reform legislation, Code
§ 18.2-250.1 was repealed in its entirety and the language of subsection F was recodified at Code
§ 4.1-1302.  2021 Va. Acts Sp. Sess. 1, chs. 550-51.  This statute is largely identical to Code
§ 18.2-250.1(F) except that it also prohibits the issuance of search warrants based solely on
marijuana odor.  Because the suppression hearing in this case occurred on May 14, 2021, Code
§ 18.2-250.1(F) as it read prior to its recodification and amendment as Code § 4.1-1302, is the
statute implicated in our analysis.

## I. Background

On an appeal of a circuit court's denial of a motion to suppress, this Court reviews the evidence in the light most favorable to the Commonwealth. *Rivera v. Commonwealth*, 65 Va. App. 379, 384 (2012). Because Montgomery entered a conditional guilty plea and there was no trial, the facts of the case are based on the parties' uncontested proffers of evidence at the suppression hearing.[2]

On November 9, 2018, Detective Carpenter of the Hampton Police Division saw a black Honda Civic driving with its headlights on high beam, blinding oncoming traffic. Detective Carpenter stopped the vehicle and asked the driver, Montgomery, for his identification. Detective Carpenter smelled marijuana coming from the vehicle, and Montgomery appeared nervous. Due to the odor of marijuana, Detective Carpenter detained Montgomery and searched the car, finding a book bag containing what appeared to be marijuana.[3] Montgomery was arrested and ultimately indicted by a grand jury on May 6, 2019, for one count of possession of marijuana with intent to distribute.

On November 9, 2020, the General Assembly amended Code § 18.2-250.1 by adding subsection F, effective March 1, 2021, outlawing searches based solely on the odor of marijuana. 2020 Va. Acts Sp. Sess. 1, ch. 51. Code § 18.2-250.1(F) stated as follows:

> No law-enforcement officer, as defined in § 9.1-101, may lawfully stop, search, or seize any person, place, or thing solely on the basis of the odor of marijuana and no evidence discovered or obtained pursuant to a violation of this subsection, including evidence discovered or obtained with the person's consent, shall be admissible in any trial, hearing, or other proceeding.

---

[2] Neither party objected to the other's proffer of the facts at either the suppression hearing or guilty plea.

[3] The substance was confirmed to be marijuana by the Department of Forensic Science and weighed 128.14 +/- .32 grams (roughly 4.8 ounces or 1/3 pound).

Following the effective date of the amended Code § 18.2-250.1(F), Montgomery moved to suppress the marijuana obtained because of the "plain smell" search. Montgomery argued that the law "prohibits any prosecution where evidence is derived from the odor of marijuana." In his brief in support of this motion, Montgomery also argued that the changes to the law were procedural, thereby requiring that the changes "be retroactively applied to Law Enforcement [sic] during the search at issue."

On May 14, 2021, the circuit court conducted a suppression hearing on Montgomery's motion. The court took the matter under advisement and subsequently issued a ruling denying the motion because the amendments were substantive changes in the law and did not apply retroactively.[4]

Following the court's ruling, on July 23, 2021, Montgomery entered a conditional guilty plea under Code § 19.2-254 permitting him to appeal the circuit court's ruling on the motion to suppress. The circuit court sentenced Montgomery to five years' incarceration, with all five years suspended. Montgomery now appeals the denial of the motion to suppress the evidence.

## II. Analysis

Montgomery's assignment of error requires us to interpret the now repealed and recodified Code § 18.2-250.1(F) to determine whether it has retroactive effect to the search and seizure in his case. A circuit court's interpretation of a statute and its retroactive effect, or lack thereof, presents a question of law which this Court reviews *de novo*. *Eberhardt v. Commonwealth*, 74 Va. App. 23, 31 (2021); *Sink v. Commonwealth*, 28 Va. App. 655, 658 (1998). When construing statutes, the role of the judiciary is to discern the intent of the

_____

[4] The circuit court noted from the bench: "the Court is of the opinion that this is a substantive amendment versus a procedural one and not applicable to the case at bar given the . . . timeline of the proceedings."

legislature as expressed through the plain meaning of the words of the statute. *Blake v. Commonwealth*, 288 Va. 375, 381 (2014).

### A. Retroactivity Generally

A core principle of statutory interpretation is that "interpreting a law to apply retroactively is 'not favored, and . . . a statute is always construed to operate prospectively unless a contrary legislative intent is manifest.'" *McCarthy v. Commonwealth*, 73 Va. App. 630, 647 (2021) (quoting *Berner v. Mills*, 265 Va. 408, 413 (2003)); *see also Booth v. Booth*, 7 Va. App. 22, 26 (1988) ("[T]he general rule of statutory construction is that legislation only speaks prospectively."). "Every reasonable doubt is resolved against a retroactive operation of a statute, and words of a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them." *Shilling v. Commonwealth*, 4 Va. App. 500, 507 (1987).

Virginia case law is clear that this presumption can be overcome in two ways. First, a statute may apply retroactively when the General Assembly uses explicit terms detailing the retroactive effect of the legislation. *McCarthy*, 73 Va. App. at 647.[5] Second, where a law affects procedure only, instead of vested or substantive rights, the statute may "be given retroactive effect." *Id.* (quoting *Sargent Elec. Co. v. Woodall*, 228 Va. 419, 424 (1984)). "A law affects substantive rights if it 'deals with [the] creation of duties, rights, and obligations.'" *Id.* at 650 (quoting *Shiflet v. Eller*, 228 Va. 115, 120 (1984)). Alternatively, laws are procedural if they "prescribe[] methods of obtaining redress or enforcement of rights." *Shiflet*, 228 Va. at 120.

The appellate courts of the Commonwealth have used the word "retroactive" to describe two related, but significantly different, situations. First, courts have used the word "retroactive"

---

[5] While we appreciate that our dissenting colleague believes *McCarthy* to have been wrongly decided, it is nevertheless binding precedent to the extent it applies here.

- 4 -

to describe a situation where legislation "attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994); *see McCarthy*, 73 Va. App. at 650-51 (declining to attach new legal consequences to a criminal defendant's actions relating to Code § 18.2-251.03's overdose safe-harbor provision). Yet the Commonwealth's jurisprudence has also used the word "retroactive" to describe situations when a statute "is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." *Landgraf*, 511 U.S. at 269 (citation omitted). When courts say that a procedural law applies "retroactively," it is this second definition of "retroactive" that is meant.[6] In other words, a purely procedural statutory change will apply prospectively to any procedure or process occurring after its effective date irrespective of when any cause of action or criminal offense may occur.[7]

For example, in *Allen v. Mottley Construction Company*, 160 Va. 875 (1933), the Virginia Supreme Court "retroactively" applied a shortened review period to a workers' compensation claimant's right to review an award for changed circumstances. In that case, the claimant received a final payment of a workers' compensation award on November 10, 1931. 160 Va. at 877. On June 21, 1932, legislation became effective that prohibited a claimant from seeking a review of the award amount after twelve months from the date of the last payment. *Id.*

---

[6] These definitions of retroactivity do not have any bearing on whether a given statute will be given effect, but simply whether any effect would be retroactive.

[7] Any confusion stems in part from the presumption that "when a statute is amended while an action is pending, the rights of the parties are to be decided in accordance with the law in effect when the action was begun, unless the amended statute shows a clear intention to vary such rights." *Washington v. Commonwealth*, 216 Va. 185, 193 (1975) (citing *Burton v. Siefert Plastic Relief Co.*, 108 Va. 338, 350-51 (1908)). When a court applies a procedural rule in a pending action, they are not actually applying the rule "retroactively." Instead, they are simply noting that the law in effect when the cause of action arose does not govern the procedural aspects of a case, but the law in effect when the procedure itself takes place does.

at 878-79.  On February 21, 1933, the claimant sought review of his award amount claiming that he had suffered a change in condition.  *Id.* at 877.  In applying the limitation period "retroactively" the Supreme Court simply held that the law at the time of the review was controlling, not the time of the original workplace injury.  *Id.* at 889-90.  The Supreme Court was *not* holding that a review held before the statute was untimely.  In other words, the Supreme Court did not attach a new legal consequence to a review of an award timely under the old statute, but untimely under the new one.  Instead, the Supreme Court simply applied the new limitation period in a case that arose from conduct antedating the statute's enactment.[8]

This substantive/procedural dichotomy and the so-called "retroactive" effect of procedural statutes has been codified in Code § 1-239, which reads:

> No new act of the General Assembly shall be construed to repeal a former law, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture, or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture, or punishment so incurred, or any right accrued, or claim arising before the new act of the General Assembly takes effect; except that the proceedings thereafter held shall conform, so far as practicable, to the laws in force at the time of such proceedings; and if any penalty, forfeiture, or punishment be mitigated by any provision of the new

---

[8] Similarly, in *Wardell Orthopaedics, P.C. v. Colonna's Shipyard, Inc.*, 72 Va. App. 296 (2020), this Court used a similar definition of retroactivity.  There, a workers' compensation claimant suffered an injury on January 29, 2010, that was compensable under both the Workers' Compensation Act and the Longshore and Harbor Workers' Compensation Act (LHWCA).  72 Va. App. at 299-300.  On March 31, 2015, a medical provider sought compensation for services provided to that employee.  *Id.* at 300.  On July 1, 2019, the General Assembly enacted legislation which prohibited the Commission from adjudicating any claims seeking additional payment for medical services rendered before July 1, 2014, if payment had been accepted under the LHWCA.  *Id.* at 302.  In holding that the statute applied "retroactively" to bar the provider's claim, this Court reasoned that the jurisdictional rule was procedural.  *Id.* at 304-05.  As was the case in *Allen*, the Court held that the law in place at the time of the procedure governed, not the law in place at the time of the injury.  *Id.* at 306.  The Court did not hold that the statute attached a new legal consequence to an adjudication that had already happened.  Again, the Court simply held that the new procedural rule applied to a case that arose from conduct antedating the statute's enactment.

- 6 -

act of the General Assembly, such provision may, with the consent of the party affected, be applied to any judgment pronounced after the new act of the General Assembly takes effect.

As Code § 1-239 makes clear, statutory changes that only affect procedure should "conform, so far as practicable, to the laws in force at the time of such proceedings." Code § 1-239 does not require courts to alter the legal consequences of a proceeding that has already taken place, but to instead look at the law at the time of the procedure and apply that law, no matter when the substance of any cause of action arose or criminal offense took place.

Indeed, no Virginia case has ever held that a procedural amendment to a rule or statute applies to attach different legal consequences to a procedure that took place before the amendment. Even where an amendment to a law is procedural instead of substantive, courts will not impliedly alter the legal consequences of a procedure that has already taken place at the time of the statutory change.[9]

## B. Whether Code § 18.2-250.1(F) Applies in this Case

We have addressed the general rule regarding the retroactivity of a statute because Montgomery and the dissent argue that this general rule applies to render prior Code § 18.2-250.1(F) wholly procedural. However, that rule only applies when the General Assembly has not made clear its intent regarding the scope of the applicability of a particular statute. In our view, the legislature has done so here.

---

[9] Other jurisdictions have made this rule explicit. *See Smallwood v. Mann*, 205 S.W.3d 358, 365 n.7 (Tenn. 2006) ("Though 'procedural' changes in the law generally apply retrospectively to causes of action arising before such changes become law, where the pending action has gone beyond the procedural stage to which the amendment pertains, an amendment will not apply."); *Workplace Sys. Inc. v. CIGNA Prop. & Cas. Ins. Co.*, 723 A.2d 583, 584 (N.H. 1999) ("Where the statute is remedial or procedural in nature, however, the presumption is reversed, and the statute is 'usually deemed to apply retroactively to those pending cases which on the effective date of the statute have not yet gone beyond the procedural stage to which the statute pertains.'" (quoting *State v. Hamel*, 643 A.2d 953, 955 (N.H. 1994))).

Montgomery's offense occurred in 2018 more than two years before Code § 18.2-250.1(F) existed. Therefore, the statutory change can apply here only if, either the plain language of the statute makes that retroactive application clear or, if no such clarity exists in the language of the statute, Code § 18.2-250.1(F) must be wholly procedural to apply to Montgomery's case. *See McCarthy*, 73 Va. App. at 647 ("[I]n circumstances where a statutory amendment effects a change in *both* substance and remedy (or procedure), courts will not give the statute retroactive effect." (citing *Pennington v. Superior Iron Works*, 30 Va. App. 454, 459 (1999))).

Code § 18.2-250.1(F) does two things. First, it provides a statutory expansion of the constitutional restrictions on the ability of a law enforcement officer to conduct a search or a seizure by stating that "[n]o law-enforcement officer, as defined in § 9.1-101, may lawfully stop, search, or seize any person, place, or thing solely on the basis of the odor of marijuana[.]" Second, the statute provides an exclusionary remedy for violating the search and seizure prohibition: "no evidence discovered or obtained pursuant to a violation of this subsection . . . shall be admissible in any trial, hearing, or other proceeding."

Montgomery contends that Code § 18.2-250.1(F) applies to "any trial, hearing, or other proceeding," and therefore the evidentiary prong of the statute must apply to his case. Montgomery also argues that the exclusionary remedy is a procedural rule of evidence and therefore should apply even though his offense occurred before the effective date of the statute.

The Virginia Supreme Court has held that "[t]he word 'any,' like other unrestrictive modifiers such as 'an' and 'all,' is generally considered to apply without limitation." *Sussex Cmty. Servs. Ass'n v. Va. Soc'y for Mentally Retarded Children, Inc.*, 251 Va. 240, 243 (2014). Accordingly, the use of the word "any" leads us to conclude that the exclusionary remedy of Code § 18.2-250.1(F) applies to a suppression hearing or trial conducted after the effective date

- 8 -

of the statute.[10]  We agree that the exclusionary remedy of Code § 18.2-250.1(F) is a rule that prescribes a method for obtaining redress or enforcement of rights and is therefore a procedural rule.  *See Wyatt v. Va. Dep't of Soc. Servs.*, 11 Va. App. 225, 229 (1990) (holding that rules of evidence are procedural).

That said, merely finding that the statutory exclusionary rule facially *may* apply to Montgomery's suppression hearing does not end the inquiry.  This conclusion only addresses the second part of the statutory amendment, and Montgomery glosses over the first part of the statute that provides that the evidentiary prohibition only applies to "a violation" of the prohibition to search or seize evidence solely based on the odor of marijuana.  While the statute's exclusionary remedy applies to "any trial, hearing, or other proceeding," the rule only requires the exclusion of "evidence discovered or obtained pursuant to a *violation of this subsection*."  Code § 18.2-250.1(F) (emphasis added).  The ordinary meaning of a "violation" is "the breaking of a rule."  *Breach And Its Near-Synonyms*, *Garner's Dictionary of Legal Usage* (3d ed. 2011); *see also Violate*, *New Oxford American Dictionary* (3d ed. 2010) ("[B]reak or fail to comply with . . . ."); *Violation*, *Black's Law Dictionary* (11th ed. 2019) ("An infraction or breach of the law; a transgression.").  A "violation connotes a more serious disregard of the law or a willful indifference to the rights of others."  *Breach And Its Near-Synonyms*, *Garner's, supra.*  In this case, assuming the evidence here was discovered or obtained "solely on the basis of the odor of marijuana," the evidence was *not* discovered or obtained "pursuant to a violation" of Code § 18.2-250.1(F) because one cannot violate a statute or break a rule that does not exist.  Because

---

[10] We note, as explained above, that determining that the exclusionary remedy facially applies to any trial, hearing, or other proceeding that takes place *after* the effective date of the statute is a prospective and not a retroactive application of the statute.

the statute was not in effect at the time of the search, no law enforcement officer could have violated it.

Montgomery and the dissent would have us disregard the ordinary meaning of the word "violate" and instead assume that the General Assembly simply intended to make all evidence obtained by a search based solely on the odor of marijuana inadmissible. The General Assembly could have simply said precisely that, but it did not. "[W]hen the General Assembly has used words of plain and definite import, courts cannot assign to them a construction that would be tantamount to holding that the General Assembly intended something other than that which it actually expressed." *Mozley v. Prestwould Bd. of Dirs.*, 264 Va. 549, 554 (2002). The General Assembly plainly expressed its intent that the exclusionary remedy would be triggered only by a "violation" of the new ban on plain-smell searches.

Had the General Assembly intended otherwise, it could easily have said so. For example, the General Assembly simply could have passed a statute that only said, "any evidence obtained based solely on the odor of marijuana shall be inadmissible in any trial, hearing, or other proceeding." Alternatively, they could have said, "any evidence so obtained shall be inadmissible at any trial, hearing, or other proceeding." The point is that the scope of the application of any statute is framed by the specific words chosen by the legislature, subject only to constitutional limitations which no one is suggesting are implicated here.

Despite acknowledging their existence, in striving mightily to rationalize its preferred result in this case, the dissent does so by ignoring two fundamental principles of statutory

construction: the principle that retroactive applications of laws are not favored and the principle that meaning must be given to every word the General Assembly has chosen to use.[11]

In the case of Code § 18.2-250.1(F), the General Assembly chose a "violation" as a required predicate trigger to the evidentiary bar and there is no ordinary meaning of the word "violation" that leads to the result proposed by the dissent. The plain text of this statute indicates that the General Assembly apparently made a conscious decision not to adopt a blanket rule of evidence barring the admission of all evidence obtained based solely on the odor of marijuana irrespective of when the evidence was obtained. Instead, the General Assembly adopted a statute with two distinct commands: a prohibition on certain law enforcement conduct and a consequence for failing to comply with that prohibition.

Montgomery argues that the search prohibition of the statute should apply to render the 2018 search retroactively illegal, thereby making the search a violation of the statute. He asserts that the search prong deals with "law-enforcement procedures" and accordingly the ban on plain-smell searches is merely procedural and may be applied retroactively; we disagree.[12]

First, we decline to accept Montgomery's characterization of the search prohibition as "procedural." As noted, a "law affects substantive rights if it 'deals with [the] creation of duties, rights, and obligations.'" *McCarthy*, 73 Va. App. at 650 (quoting *Shiflet* 228 Va. at 120). Or laws are procedural if they "prescribe[] methods of obtaining redress or enforcement of rights." *Shiflet*, 228 Va. at 120. Before the enactment of Code § 18.2-250.1(F), neither the Fourth

---

[11] Our dissenting colleague essentially concludes that only twenty-eight words of a sixty-two-word statute have any real meaning.

[12] We reiterate that the exclusionary remedy of Code § 18.2-250.1(F)) is procedural and was facially applicable to Montgomery's suppression hearing that occurred following the effective date of the statute. The question we address here is whether the prohibition on the plain-smell searches is retroactive such that Detective Carpenter's search of Montgomery's vehicle in 2018 was a "violation" of Code § 18.2-250.1(F).

- 11 -

Amendment nor the law of the Commonwealth prohibited searches based exclusively on the odor of marijuana.  We hold that the legislative intent and effect of Code § 18.2-250.1(F) is a statutory expansion of the scope of the Fourth Amendment right to be free from unreasonable searches to include searches based exclusively on the odor of marijuana.  *See Virginia v. Moore*, 553 U.S. 164, 171 (2008) (stating that states may provide "additional protections exclusively as matters of state law"); *Cooper v. California*, 386 U.S. 58, 62 (1967) (holding that the states remain free "to impose higher standards on searches and seizures than required by the Federal Constitution"); *Campbell v. Commonwealth*, 69 Va. App. 217, 234 (2018) ("[T]he Fourth Amendment of the United States Constitution is a floor, not a ceiling.").  Thus, Code § 18.2-250.1(F) deals with the "creation of duties, rights, and obligations."  Notwithstanding the dissent's reasoning that the statute *must* be purely procedural because it does not define a criminal offense, create any defense, or a new cause of action, as noted *supra*, the statute quite clearly creates both a "duty" and "obligation" on the part of law enforcement to refrain from searches and seizures based solely upon the odor of marijuana for the benefit of everyone and a "right" to not have such evidence used against them.[13]

Relatedly, the search and seizure prong of the statute is not procedural as it is completely silent on the method of obtaining redress or the enforcement of the right it creates; instead, the

---

[13] The dissent proceeds from the false premise that "Because the only remedy provided by the statute here is the exclusion of evidence, Code § 18.2-250.1(F) ultimately cannot prevent police from stopping, or searching based on the smell of marijuana alone; it only prevents evidence in violation of the statute from being introduced at any hearing or trial."  The dissent argues that "the legislature did not create any freestanding substantive 'right' to not be stopped, or searched, based on the odor of marijuana alone."  In our view, the General Assembly did precisely both of those things.  The plain language of the statute expressly provides that "No law-enforcement officer, as defined in § 9.1-101, may lawfully stop, search, or seize any person, place, or thing and no search warrant may be issued solely on the basis of the odor of marijuana."  This is an independent clause that stands alone, and its command is not limited by the fact that it is separated by a coordinating conjunction and a second independent clause that provides the exclusive remedy for a violation of this command.

scope of the entire statute is both substantive and procedural. The search and seizure prohibition created a statutory right to be free from a particular subset of searches for which the evidentiary rule in turn provided a remedy. As a result, the search prohibition of Code § 18.2-250.1(F) is a substantive change in the law and cannot be applied retroactively to render the search of Montgomery's vehicle illegal, while the evidentiary prong of the statute, though procedural, is only triggered by a search or seizure that violated the substantive portion of the statute.

Second, even if we accept the erroneous characterization by Montgomery that the search and seizure prohibition is purely procedural, the "procedure" at issue, the search and seizure of the marijuana, had taken place before the statute became effective. In that case, Montgomery seeks to apply what he asserts as a procedural rule retroactively to attach new legal consequences to a procedure—a search—that has already taken place. This cannot be done without express direction from the General Assembly absent from this statute. As discussed above, when the Commonwealth's jurisprudence says that procedural amendments may be given retroactive effect, it simply means that the rule may be applied to all current and prospective procedures, even "in a case arising from conduct antedating the statute's enactment." *Landgraf*, 511 U.S. at 270; *see also* Code § 1-239 ("except that the proceedings *thereafter held* shall conform, so far as practicable, to the laws in force *at the time of such proceedings . . .* " (emphases added)). We therefore decline Montgomery's invitation to ignore prior precedent and drastically expand the concept of retroactively applying statutory changes to the Code of Virginia.[14]

---

[14] We reiterate that the exclusionary remedy provided in the statute facially applied to Montgomery's hearing. Applying the exclusionary prong of the statute to an after-occurring proceeding does not attach new legal consequences to a previous act. Montgomery specifically argues that the search prong of the statute should apply retroactively to make a legal search an illegal one. This would attach new legal consequences to the 2018 search, which we cannot do.

- 13 -

III.  Conclusion

Code § 18.2-250.1(F) represents an expansion of a substantive right to be free from a search based solely on the odor of marijuana, and the express legislative intent of that statute is to only prohibit the evidentiary use of evidence when it is obtained in violation of that prohibition.  In this case, because there was no such prohibition at the time of the search, we hold that the circuit court did not err in denying Montgomery's motion to suppress the evidence.

*Affirmed.*

Lorish, J. dissenting.

Code § 18.2-250.1(F) took effect after Montgomery's vehicle was searched, but before his trial. The question here is whether the evidentiary rule in this intervening statute applies at that later-occurring trial. We recently addressed two related, but different cases. *See McCarthy v. Commonwealth*, 73 Va. App. 630, 647 (2021) (examining the new defense in Code § 18.2-251.03); *Green v. Commonwealth*, 75 Va. App. 69 (2022) (considering change in certain probation violation penalties in Code § 19.2-306.1).

Under the most recent iteration of our retroactivity analysis set out in *McCarthy*, and repeated by the majority here, Code § 18.2-250.1(F) is a rule affecting only procedure, remedy, and the admissibility of evidence, and therefore the majority errs by categorizing it as "substantive." Since it affects only procedure, the statute should apply at a later-occurring trial. For these same reasons, if the General Assembly repeals this statute, the evidentiary rule would not apply at a trial the day after that repeal became effective, regardless of when the search took place.

Because the majority opinion further enshrines what I consider to be a recent wrong turn in our doctrine—the reduction of all questions about retroactivity to a substantive versus procedural binary—I also address why this deviates from our long-standing precedent. Our pre-*McCarthy* cases properly focused not on the general nature of a new statute, but considered instead whether application of the law would *diminish* the substantive or vested rights of a *party* in the particular case. If the new law did not have this effect, we found it was procedural, or remedial, or evidentiary, and it applied prospectively at later stages in the case.

For these reasons, I respectfully dissent.

- 15 -

I.  Applying the majority's simple "substantive or procedural" test, this statute does not implicate substantive or vested rights, so it is procedural.

The majority begins by setting out our judicial presumption against interpreting a law retroactively.  *See McCarthy*, 73 Va. App. at 647 ("[I]nterpreting a law to apply retroactively is 'not favored, and . . . a statute is always construed to operate prospectively unless a contrary legislative intent is manifest.'" (quoting *Berner v. Mills*, 265 Va. 408, 413 (2003))).  I agree with the majority that this presumption does not apply when a new law does not disturb vested or substantive rights.  *Id.*  I also agree that "[w]hen a court applies a procedural rule in a pending action, they are not actually applying the rule 'retroactively'" at all.

The majority then relies on *McCarthy* for the proposition that "[a] law is 'substantive . . . if it alters the range of conduct or the class of persons' that is punishable under the law."  *Id.* at 650 (second alteration in original) (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)).  Our Supreme Court has elsewhere said that "[a] law affects substantive rights if it 'deals with [the] creation of duties, rights, and obligations.'"  *Id.* (second alteration in original) (quoting *Shiflet v. Eller*, 228 Va. 115, 120 (1984)).  Where a law does not diminish vested or substantive rights, we find that it is procedural, remedial or evidentiary.[15]

Since "Code § 18.2-251.03's amendments plainly affected substantive rights because they changed the class of persons and range of conduct that is punishable under the law," *McCarthy* found that statute affected substantive rights.  *Id.*  The amended statute made "what appellant did before . . . no longer considered a crime under Code § 18.2-250."  *Id.*  Thus, even

---

[15] *See, e.g.*, *Chesterfield Civic Ass'n v. Bd. of Zoning Appeals of Chesterfield Cnty*, 215 Va. 399 (1974) (statute changing the jurisdiction to bring a claim or appeal does not impact vested rights and is therefore procedural); *Allen v. Mottley Constr. Co.*, 160 Va. 875 (1933) (changing the period for review for a decision did not impact vested rights and therefore was procedural); *Morrison v. Bestler*, 239 Va. 166, 172-73 (1990) (describing new statutory notice requirements as procedural because they did not create a new cause of action).

though this new defense would have benefited McCarthy, it did not apply at his trial. *Id.* I now apply these principles to Code § 18.2-250.1(F).

> A. The majority correctly concludes that the second clause in Code § 18.2-250.1(F) sets out an evidentiary rule.

The majority severs Code § 18.2-250.1(F) into a "statutory expansion of the constitutional restrictions on the ability of a law enforcement officer to conduct a search or a seizure," and "an exclusionary remedy for violating the search and seizure prohibition." The majority then concludes that the latter part of the statute is procedural, and so it would apply at a later trial. *See Duffy v. Hartsock*, 187 Va. 406, 416 (1948) ("Though contractual rights may not be impaired or vested property interest destroyed, mere matters of procedure and remedy for their enforcement and preservation may, at the will of the legislature, be altered, curtailed, or repealed . . . .").

Indeed, "[r]ules of evidence are procedural." *Wyatt v. Va. Dept. of Soc. Servs.*, 11 Va. App. 225, 229 (1990). "[S]tatutory changes in the mode of trial or the rules of evidence, which do not deprive the accused of a defense and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited." *Pilcher v. Commonwealth*, 41 Va. App. 158, 167 (2003) (quoting *Beazell v. Ohio*, 269 U.S. 167, 170 (1925)). Likewise, "the issue of the admissibility of evidence is simply different from the question of whether the properly admitted evidence is sufficient to convict the defendant. Evidence admissibility rules do not go to the general issue of guilt . . . ." *Id.* (internal quotation omitted).[16] For these reasons, a "rape shield" law "adopted to 'limit or prohibit the admission of general reputation

---

[16] In *Miller v. Commonwealth*, 172 Va. 639 (1939), the Supreme Court distinguished between statutory language that defined the elements of an offense, defining this to be a "rule of substantive law," from the rules of evidence to prove the offense. *See also Roberts v. S. Ry. Co.*, 151 Va. 815, 842-43 (1928) (Christian, J. concurring) ("Since the decision in the *Jeffress Case,*

- 17 -

evidence,'" but to "'permit the introduction of evidence of specific acts of sexual conduct . . . in carefully limited circumstances'" was procedural and did not apply *ex post facto*. *Id.* (quoting *Winfield v. Commonwealth*, 225 Va. 211, 218 (1983)).[17]  The Commonwealth never has a "substantive" or "vested" interest in the admission of certain evidence at trial.

      B.  The evidentiary rule is the exclusive remedy for violations of the first clause of Code § 4.1-1302(A), which creates a procedural rule applicable to criminal investigations.

"Criminal procedure" is generally understood as "[t]he rules governing the mechanisms under which crimes are investigated, prosecuted, adjudicated, and punished." *Criminal Procedure*, Black's Law Dictionary (11th ed. 2019).  The first clause of Code § 18.2-250.1(F) creates such a procedural rule by limiting the ways that law enforcement officers and magistrates in Virginia may investigate the commission of potential criminal law offenses.  Violations of these rules may be vindicated through only the narrowest of evidentiary remedies.

When a statute provides for a specific remedy, "that remedy is exclusive unless the statute says otherwise." *Cherrie v. Va. Health Servs., Inc.*, 292 Va. 309, 315 (2016) (quoting *Concerned Taxpayers of Brunswick Cnty. v. Cnty. of Brunswick*, 249 Va. 320, 330 (1995) (citation omitted)).  "When a statute is silent" on the matter, we "have no authority to infer a statutory private right of action . . . ." *Id.*  Because the only remedy provided by the statute here is the exclusion of evidence, Code § 18.2-250.1(F) ultimately cannot prevent police from stopping, or searching based on the smell of marijuana alone; it only prevents evidence in

---

the 'unbending test' rule is not a rule of substantive law in Virginia, but a rule of evidence, that is, that the methods pursued by others in similar work is evidence that the defendant exercised reasonable care in renewing the bridge.").

[17] Statutes shifting the burden of proof in civil matters are also evidentiary and have also been held to be procedural changes.  *Decker v. Decker*, 17 Va. App. 12 (1993) (concluding that a statute changing the burden of proof for equitable distribution of marital estate did not affect substantive rights); *Wyatt*, 11 Va. App. at 225 (finding that a statute changing the burden of proof about disputed paternity was procedural).

violation of the statute from being introduced at any hearing or trial. In other words, the legislature did not create any freestanding substantive "right" to not be stopped, or searched, based on the odor of marijuana alone. Even the Fourth Amendment exclusionary rule "is a judicially-created remedy, not an individual's constitutional right." *Logan v. Commonwealth*, 279 Va. 288, 292 (2010). For this reason, the majority is incorrect that "the legislative intent and effect of Code § 18.2-250.1(F) is a statutory expansion of the scope of the Fourth Amendment right to be free from unreasonable searches to include searches based exclusively on the odor of marijuana."

Where a statute governs procedures and does not provide a private right of action to enforce them, the statute is not part of our "substantive law." *Cherrie*, 292 Va. at 314. In *Cherrie*, the Supreme Court explained that "[i]n Virginia, 'substantive law' determines whether a private claimant has a right to bring a judicial action" and that "[s]ubstantive law includes the Constitution of Virginia, laws enacted by the General Assembly, and historic common-law principles recognized by our courts." *Id.* Therefore, when a regulation required a nursing home to produce certain documents, but it failed to do so, that did not mean that "substantive law" gave the plaintiffs a "legal 'right' to seek judicial enforcement of their claimed cause of action." *Id.* at 315. The procedural rule did not include a privately enforceable right. *Id.*

Put simply, no part of Code § 18.2-250.1(F) impacts the definition of any criminal offense, creates any defense, or creates a new cause of action.[18] Thus, it does not impact the "substantive law" of Virginia. Laws that "change the ingredients of the offence or the ultimate facts necessary to establish guilt" affect substantive law, but "[e]vidence admissibility rules do

---

[18] Nothing about the statute "alters the range of conduct or the class of persons" punishable under the law. *See McCarthy*, 73 Va. App. at 650. Likewise, no part of this law changes whether Montgomery's conduct was criminal or not.

- 19 -

not go to the general issue of guilt," so they cannot. *Pilcher*, 41 Va. App. at 167 (first quoting *Hopt v. Utah*, 110 U.S. 574, 590 (1884); then quoting *Carmell v. Texas*, 529 U.S. 513, 546 (2000)).

Our many cases holding that the removal of a statutory remedy does not diminish a party's substantive or vested rights support this conclusion as well. "[S]tatutory remedies do not create vested rights." *Morency v. Commonwealth*, 274 Va. 569, 576 (2007). That is why there was no concern with applying a new statute that eliminated the defense of usury to set aside a contract, even where the contracts were executed before the effective date of that statute. *Town of Danville v. Pace*, 66 Va. 1, 11 (1874). While legislation cannot "interfere with vested contractual rights," the Supreme Court explained that "a party does not have a vested or constitutional right in the statutory defense of usury . . . ." *Morency*, 274 Va. at 576 (citing *Pace*, 66 Va. at 19, 23). A petitioner likewise had no constitutional or vested "right to petition for judicial review." *Commonwealth v. Shaffer*, 263 Va. 428, 432 (2002) (finding that an amendment to the statutorily created right to judicial review for the administrative revocation of a driver's license only concerned a procedural remedy). The same result was true where a statute had created a procedure by which a petitioner could have his information removed from an online sex offender registry. *Morency*, 274 Va. at 577. Removal "could be altered 'at will' by the legislature," and the petitioner had no "accrued right that was affected by the retroactive application" of the amendment. *Id*. In each of these cases, removing a statutory remedy did not harm substantive or vested rights. And if an amendment removing such a remedy can be applied prospectively, there is no logical reason why a statute *creating* a new remedy would impact substantive or vested rights.

C.  The first clause in Code § 18.2-250.1(F) also does not create the type of duty or obligation that implicates substantive or vested rights.

Our Supreme Court has explained that "[s]ubstantive rights . . . are included within that part of the law dealing with creation of duties, rights, and obligations . . . ." *Shiflet,* 228 Va. at 120.  Latching onto this later phrase about duties, rights, and obligations, the majority reads Code § 18.2-250.1(F) as creating a new "duty" of law enforcement officers "to refrain from searches and seizures based solely upon the odor of marijuana . . . ."  Therefore, the majority concludes the law is substantive.

In locating "substantive rights" in the "part of the law dealing with creation of duties, rights, and obligations," *Shiflet* did not hold that every law creating any new obligation or duty for any person or entity is *ipso facto* "substantive."  Instead, our precedent demonstrates that the type of duties, rights, and obligations *Shiflet* referred to are those that relate to causes of action, rights of recovery, contracts, real property interests, and the nature of what is criminal.  *See, e.g.*, *Va. Elec. & Power Co. v. State Corp. Comm'n*, 300 Va. 153, 165-66 (2021) (holding that the amended statutory definition of renewable energy did not retroactively apply to contracts executed before the amendment took effect because it would conflict with pre-existing contract rights); *Hering v. Hering*, 33 Va. App. 368, 374 (2000) (concluding the obligation to pay spousal support was contractual and could not be modified by subsequent legislative enactment); *Gaynor v. Hird*, 11 Va. App. 588, 592-93 (1991) (finding that the "right to retain ownership of real property, in kind, is a substantive right" and observing "the law recognizes the unique nature of real property").

*Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994), described these same duties, rights, and obligations as those that impose new "legal consequences" for past actions.  Without explanation, the majority assumes Code § 18.2-250.1(F) also creates a new "legal consequence"

- 21 -

and is thus substantive in nature. But of course, at some level, every new law has some legal consequence, or it would not be a law. *Landgraf* made clear that a "statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . ." *Id.* at 269. Instead, the type of "legal consequences" that matter are the types of changed obligations and duties that matter—changed elements or penalties associated with a criminal offense, new or removed causes of action, or the general upsetting of settled or vested expectations of a party.

In highlighting the intervening statute in *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268 (1969), as emblematic of one affecting only procedure, *Landgraf* undermines the majority's interpretation. *Landgraf*, 511 U.S. at 276-77. In *Thorpe,* the Supreme Court considered the effect of a new policy issued by the Department of Housing and Urban Development (HUD).[19] 393 U.S. at 268. Thorpe had a lease with the Housing Authority of the City of Durham that allowed the Housing Authority to evict her on fifteen days' notice, without requiring any reason to be given, and this is exactly what happened. *Id.* at 270. This new policy was put into effect after Thorpe's eviction was upheld on appeal, but while her petition for certiorari was pending before the Supreme Court. *Id.* at 272.

The Supreme Court explained that the new policy did not change "[t]he respective obligations" of the Housing Authority or HUD under an existing contract, which was "as enforceable now as it was prior to the issuance" of the policy. *Id.* at 279. "Likewise, the lease agreement between the Authority and petitioner remains inviolate." *Id.* "Petitioner must still pay her rent and comply with the other terms of the lease; and, as the Authority itself

---

[19] The policy directed, in relevant part, that before instituting an eviction proceeding local housing authorities operating all federally assisted projects should inform the tenant "in a private conference or other appropriate manner" of the reasons for the eviction and give him "an opportunity to make such reply or explanation as he may wish." *Thorpe*, 393 U.S. at 272.

- 22 -

acknowledges, she is still subject to eviction." *Id.* Because "HUD has merely provided for a particular type of notification that must precede eviction" this was a "mode[] of proceeding" that did "not deny a remedy or so embarrass [the lease] with conditions or restrictions as seriously to impair the value of the right." *Id.* at 279-80. That the Housing Authority could not have known about the notice procedures at the time it evicted Thorpe was irrelevant. So was the fact that the policy created new duties and obligations for the Housing Authority.

Likewise, "[t]he Virginia long arm statutes are remedial only and do not disturb vested rights or create new obligations; they merely supply a remedy to enforce an existing right." *Walke v. Dallas, Inc.*, 209 Va. 32, 35 (1968). This is true even though it could have easily been said that the effect of the statute was precisely to create new duties and obligations, subjecting foreign parties to lawsuits in Virginia, though at the time of the underlying conduct giving rise to cause of action, they could not be sued here. Nevertheless, these statutes "create no new cause of action and take away no existing right or remedy." *Id.* "They only provide a forum for asserting an existing right . . . ." *Id.* Therefore, they are procedural, or remedial in nature.

If the new duties and obligations in *Thorpe* and *Walke* did not create new "legal consequences" for past actions, then neither does Code § 18.2-250.1(F). Montgomery must still comply with the substantive law prohibiting the possession of marijuana with the intent to distribute. Code § 18.2-250.1(F) only limits the evidence the Commonwealth may use to prove the offense.

D. The "pursuant to a violation" language in Code § 18.2-250.1(F) does not change this analysis.

Imagine the legislature had enacted the following statute:

> No law-enforcement officer, as defined in § 9.1-101, may lawfully
> stop, search, or seize any person, place, or thing solely on the basis
> of the odor of marijuana. No evidence discovered or obtained
> pursuant to a stop, search, or seizure of any person, place, or thing

- 23 -

solely on the basis of the odor of marijuana, including evidence discovered or obtained with the person's consent, shall be admissible in any trial, hearing, or other proceeding.

The majority concedes that this second sentence would be entirely procedural and that therefore it would apply at a later-occurring trial even though the relevant stop, search, or seizure occurred prior to the statute's effective date. The majority further agrees that no further expression of legislative intent would be required for this to be the result, even though a law enforcement officer could not have known that there would be anything problematic about the search when it occurred. Nevertheless, the majority finds the structure of Code § 18.2-250.1(F) requires a different result. While "the exclusionary remedy provided in the statute facially applied to Montgomery's hearing," the majority finds that the legislature "plainly expressed its intent that the exclusionary remedy would be triggered only by a 'violation' of the new ban on plain-smell searches."

The majority locates this plainly-expressed legislative intent in the phrase "pursuant to a violation of this subsection." But what is a "violation of this subsection"? A stop, search, or seizure of any person, place, or thing or search warrant issued solely on the basis of the odor of marijuana. If we substitute this definition in for the relevant phrase in Code § 18.2-250.1(F), we are left with a statute that says:

> No law-enforcement officer, as defined in § 9.1-101, may lawfully stop, search, or seize any person, place or thing and no search warrant may be issued solely on the basis of the odor of marijuana and no evidence discovered or obtained pursuant *to a stop, search, or seizure of any person, place, or thing solely on the basis of the odor of marijuana*, including evidence discovered or obtained with the person's consent, shall be admissible in any trial, hearing, or other proceeding.

In other words, the second clause, within this compound sentence, would be indistinguishable from the version the majority concedes would apply at Montgomery's trial. Instead of using this definition (from the text itself), the majority relies on extratextual dictionary definitions to infer

- 24 -

the legislature only intended this result where a law enforcement officer intended to undertake such a search despite knowing it was illegal.

Instead of inferring the legislature intended this result, our precedent requires us to infer that whenever the legislature enacts a new procedural rule it applies during a later-occurring proceeding. *See McCarthy*, 73 Va. App. at 647 (explaining the legislature's intent to apply a law retroactively is shown "when the statute's amended terms affect 'remedial' or 'procedural' rights").[20] Code § 1-239, which instructs us to look at legislative intent, only applies when an intervening statute diminishes a party's substantive or vested rights. *See, e.g.*, *Phipps v. Sutherland*, 201 Va. 448, 453 (1959); *City of Norfolk v. Kohler*, 234 Va. 341, 345 (1987).

While no express indication of legislative intent is required for a procedural rule to apply prospectively, it is still compelling that the legislature made this new evidentiary rule apply to "*any* trial, hearing, or other proceeding." Code § 18.2-250.1(F) (emphasis added). As our case law has repeatedly explained, the word "any" is significant, and demonstrates the General Assembly's intent for a rule to be given retroactive effect. *Sussex Cmty. Servs. Ass'n v. Va. Soc'y for Mentally Retarded Children, Inc.*, 251 Va. 240, 243 (1996). In interpreting a statute that said, "[n]o corporation shall hereafter interpose the defense of usury in *any* action," the Supreme Court found the words "'any action' necessarily include suits instituted before as well as after the passage of the act." *Allen v. Mottley Constr. Co.*, 160 Va. 875, 887 (1933). The

---

[20] While not always entirely clear on this point, our cases have applied procedural provisions of an intervening statute without looking for, or requiring, any express legislative intent to do so. *See, e.g.*, *Berner*, 265 Va. at 413 n.2 (applying Code § 1-13.39:3 "because the statute is a procedural provision of law" without examining whether the legislature expressly intended for the statute to apply retroactively); *Wyatt*, 11 Va. App. at 229 (concluding statutory change was procedural and therefore there was no issue with retroactively applying the statute without additional consideration of legislative intent); *see also Sargent Elec. Co. v. Woodall*, 228 Va. 419, 424 (1984) (stating that "[a] legislative enactment, if purely procedural in nature, may be given retroactive effect, but not if it creates new rights, imposes new duties, or impairs vested interests," with no additional requirement for express intent).

Supreme Court reasoned that "[i]n order to adopt the construction insisted on by the defendant, other words must be incorporated into the body of the act, so as to make it read: 'No corporation shall hereafter interpose the defense of usury in any action upon a contract hereafter made.'" *Id.* Here too, the legislature did not pass a law that said: "no evidence *hereafter* discovered or obtained pursuant to a violation of this subsection . . . shall be admissible."

Finally, the ultimate placement of this statute (recodified as Code § 4.1-1302(A)) within Title 4.1, under a Chapter titled "Prohibited Practices; Procedural Matters" affirms this same conclusion.[21] The chapter title is ultimately for "information and convenience," and is not itself dispositive of the issue, *Cox v. Commonwealth*, 73 Va. App. 339, 346 n.2 (2021) (quoting *Foster v. Commonwealth*, 44 Va. App. 574, 580 (2004)), but the statute's broader placement in Title 4.1 remains significant. Title 4.1 provides the statutory procedural framework for the legal sale and use of alcohol and cannabis and is independent of Title 18.2 which sets out substantive criminal offenses.

* * *

For these reasons, assuming the majority correctly sets out the test for whether a law may apply prospectively to a later-occurring trial, Code § 18.2-250.1(F) qualifies as a law affecting only remedy or procedure. Before concluding, I now turn to why aspects of this test should be reconsidered before it is perpetuated further.

---

[21] Effective July 1, 2021, Code § 18.2-250.1(F) was repealed and its language was recodified at Code § 4.1-1302(A). 2021 Va. Acts Sp. Sess. 1, ch. 551. While the trial court issued its ruling on Montgomery's motion to suppress prior to this date, Montgomery's guilty plea and sentencing took place after July 1, 2021, making the final version relevant here.

II. Prior to *McCarthy*, our case law refused to retroactively apply an intervening statute that would diminish or impair the substantive or vested rights of a party to the case.

The primary reason "interpreting a law to apply retroactively is 'not favored, and . . . a statute is always construed to operate prospectively unless a contrary legislative intent is manifest,'" *McCarthy*, 73 Va. App. at 647 (alteration in original) (internal quotation omitted), is because construing some laws to apply retroactively would be unconstitutional. We are loath to declare statutes unconstitutional for good reasons grounded in the separation of powers. "The legislature will never be presumed to have enacted an unconstitutional statute." *Gloucester Realty Corp. v. Guthrie*, 182 Va. 869, 875 (1944). Therefore, we do not construe any statute as "designed to interfere with existing contracts, rights of action, or suits, and especially vested rights," unless the legislature's intent to do so was "expressly declared." *Id.*

The relevant constitutional prohibitions prevent a legislature from passing an *ex post facto* law,[22] a law that impairs the obligation of contracts, or a law that disturbs vested rights in violation of the Due Process Clause.[23] U. S. Const., art. I, § 10; Va. Const., art. I, §§ 9, 11. Ultimately, a single test evolved to evaluate these separate, but related constitutional concerns. The notion that each of these provisions protect "substantive" rights first appeared in our case

---

[22] Constitutional prohibitions on *ex post facto* laws apply to statutes that impose penalties, *see Collins v. Youngblood*, 497 U.S. 37, 41 (1990), or where a change in the law "alters the definition of criminal conduct," *California Dept. of Corrs. v. Morales*, 514 U.S. 499, 506 n.3 (1995). Such laws are "manifestly unjust and oppressive." *Calder v. Bull*, 3 U.S. 386, 391 (1798).

[23] The legislature

> cannot pass . . . a law which impairs the obligation of a contract, and, since the adoption of the fourteenth amendment and the introduction into our Constitution of identical phraseology, it may be conceded that it cannot devest vested rights, because that would be to deprive a citizen of property without due process of law . . . .

*Whitlock v. Hawkins*, 105 Va. 242, 249 (1906).

law in *Shiflet*. 228 Va. at 120. *Shiflet* explained that both "'substantive' rights, as well as 'vested' rights, are included within those interests protected from retroactive application of statutes." *Id.* This was because "[t]he concept of protection of substantive rights was incorporated by the General Assembly into Virginia civil procedure with the enactment of Title 8.01, effective October 1, 1977." *Id.* (emphasis added).[24]

After *Shiflet*, our cases applied a single test: Does the new or amended statute impair or diminish the vested or substantive rights of a party?[25] If so, whether the statute concerns constitutional or contractual rights, and whether it applies to civil or criminal proceedings, we will not apply it retroactively without the express intent of the legislature. Doing otherwise would require us to find the law unconstitutional. This presumption also protects "[e]lementary considerations of fairness [that] dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf*, 511 U.S. at 265.

A. The General Assembly created one statutory exception to this general rule.

The underlying constitutional principles ground our judicial hesitancy to declare that a law applies retroactively when doing so would be unfair to an interested party. *See, e.g.*, *Pilcher*, 41 Va. App. at 168 ("Pilcher has not demonstrated that the statute affected *his* substantive rights" (emphasis added)); *Beazell*, 269 U.S. at 170 ("[I]t is now well settled that statutory changes in

---

[24] This title provided for retroactive application of all provisions of the Title, "unless a particular provision 'may materially change the substantive rights of a party (as distinguished from the procedural aspects of the remedy) . . . .'" *Shiflet*, 228 Va. at 120. Whether this merger was warranted, given that *Shiflet* was expressly based on the civil rules, is not presented here.

[25] The Supreme Court reaffirmed in *Starnes v. Cayouette*, 244 Va. 202, 212 (1992), that "substantive as well as vested rights are entitled to due process protection," and "decline[d] to distinguish among the several classes of substantive rights" because there are "too many such classes," explaining that "[b]oth parties-litigant enjoy substantive rights . . . [s]ome are rights *ex contractu*, others *ex delicto*," and that "[s]ome arise in a civil context, others in a criminal prosecution."

the mode of trial or the rules of evidence, which do not *deprive the accused* of a defense and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited." (emphasis added)).  There is no similar foundational concern about a legislature deciding to give someone a *benefit* they may not have expected.

This baseline is necessary to understand why the legislature needed to enact Code § 1-239 to create a statutory exception to these general principles.  The General Assembly passed this provision "to change the results enunciated" in three cases from the early 19th century that each permitted a defendant to receive a lesser punishment where the offense was committed under a harsher version of the law.  *Ruplenas v. Commonwealth*, 221 Va. 972, 975-76 (1981).[26] Under this statute, a defendant now may not benefit from a "penalty, forfeiture or punishment . . . mitigated by any provision of the new law" without the "consent of the [Commonwealth]."  *Id.*; *see also Green*, 75 Va. App. at ___.

The exception to the rule that an intervening evidentiary rule is procedural and applies to a later-occurring trial also proves the general point that our only constitutional concerns are for diminished rights of parties.  The only time our Supreme Court has said it would be problematic to apply a new rule of evidence at a trial for conduct that occurred before the rule became effective is where the "law [] alters the rules of evidence *and* receives less or different testimony than was required at the time of the commission of the offense in order to *convict* the offender." *McClain v. Commonwealth*, 189 Va. 847, 858 (1949) (citing *Culbertson v. Commonwealth*, 137

---

[26] There is a similar federal statute, 1 U.S.C. § 109, that was enacted in response to several Supreme Court decisions that had also held there was no constitutional reason a new law providing a lesser penalty should not apply at a later trial, even if the offense was committed before the law changed.  *Landgraf*, 511 U.S. at 270-71.

Va. 752, 755 (1923)).[27]  In other words, making it easier to convict the defendant improperly diminished vested interests.

Our focus has always been on the *effect* the law has on a party, not on abstract impacts the law may otherwise have.  "As a general rule, if there is no constitutional defect in the application of the statute to the *litigant*, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations."  *Singson v. Commonwealth*, 46 Va. App. 724, 734 (2005) (emphasis added) (internal quotation omitted); *see, e.g.*, *City of Norfolk v. Stephenson*, 185 Va. 305, 315 (1946) (relevant question was "[d]id the *defendant* acquire a vested right" that the intervening statute took away (emphasis added)); *In re Brown*, 289 Va. 343, 348 (2015) ("[R]equiring an *applicant* to prove a new element . . . is a substantive change to the statute . . . affect[ing] the duties, rights, and obligations of a *petitioner* seeking a name change . . . ." (emphasis added)).

We have never found that the Commonwealth has a vested or substantive interest in obtaining a conviction under a prior version of a law, even where it is a party to a case.  Doing so would be inconsistent with our general rule that a "retrospective criminal or penal law" is not *ex post facto* unless it "deprive[s] *a person* of some constitutional right to which he was entitled under the law at the time the offense was committed" or alters "his situation to his disadvantage."  *McClain*, 189 Va. at 858-59 (emphasis added).  And, more generally, "[a] state has no vested rights which are immune from its legislative control."  16A C.J.S. Const. Law § 492; *City of Trenton v. New Jersey*, 262 U.S. 182 (1923) (local governments are not entitled to

---

[27] A 1922 amendment to the prohibition law allowed for evidence of the defendant's general reputation as a violator of the law to be admissible at trial.  Because this law "rendere[d] admissible as substantive evidence against the defendant . . . which could not have been proved against him at all at the time of the alleged crime," it could not be applied *ex post facto*. *Culbertson*, 137 Va. at 755.

due process protection); *see also* 16B Am. Jur. 2d *Constitutional Law* § 737 (2022) ("A state constitutional provision barring the passage of retroactive laws protects only the rights of citizens; hence, a state may constitutionally pass a retroactive law which impairs its own rights and the rights of municipalities in such states . . . .").

B. The majority's analysis deviates from our precedent, building on the wrong turn we took in *McCarthy*.

*McCarthy* held that "Code § 18.2-251.03's amendments plainly affected substantive rights because they changed the class of persons and range of conduct that is punishable under the law." *McCarthy*, 73 Va. App. at 650. Therefore, because it affected substantive rights generally, making "what appellant did before . . . no longer considered a crime under Code § 18.2-250," it could not be applied retroactively. *Id.* As an initial matter, *McCarthy* erred by considering retroactivity in the first place. The new defense to prosecution should have simply been applied prospectively to prevent further prosecution in that case, without ever delving into retroactivity. *See* Code § 18.2-251.03 ("No individual shall be subject to . . . prosecution."). But to the extent retroactivity analysis was necessary, *McCarthy* shifted our case law to consider the general effects of a new law, instead of whether application of the law would harm a party.

This divergence occurred when *McCarthy* relied on a definition of "substantive" law from a federal line of cases that interprets 28 U.S.C. § 2255(h)(2)'s statutory limitations on second or successive petitions for habeas review. *McCarthy*, 73 Va. App. at 650 (stating that a law is "substantive . . . if it alters the range of conduct or the class of persons" that is punishable under the law (quoting *Schriro*, 542 U.S. at 353)). *McCarthy* then applied this definition to conclude the change in law was substantive, and therefore the defendant could not benefit from it.

- 31 -

The majority here carries forward this generalized evaluation of a statute, losing focus on the parties to the case.[28] The new statutory language did not deprive Montgomery of any constitutional right nor did it alter his situation to his disadvantage. It was still a crime to possess marijuana with the intent to distribute it, and even applying the new law, the Commonwealth could still try Montgomery for this offense and introduce other evidence not implicated by Code § 18.2-250.1(F). There is nothing of the "manifestly unjust and oppressive" nature of this law that Justice Chase found to be the root concern from the common law in applying a law *ex post facto*. *Calder v. Bull*, 3 U.S. 386, 391 (1798).

## Conclusion

Assuming the correct test for determining whether an intervening statute should apply at a later-occurring stage in a case is to ask simply "is it procedural or substantive," then Code § 18.2-250.1(F) is procedural, and not substantive. But the proper inquiry is whether a new statute diminishes a party's substantive or vested rights. Code § 18.2-250.1(F) certainly had no such effect. Therefore, this procedural and remedial rule should have applied at Montgomery's trial. I would reverse and remand for the trial court to consider whether the search here was based solely on the odor of marijuana, a factual question not reached below. If the trial court

---

[28] Putting aside whether Code § 4.1-1302(A) imposes the type of duties or obligations on law enforcement, or magistrates, that our case law finds relevant to substantive rights, any impact on these non-parties to the litigation should not be considered. Several past cases where an intervening law was declared procedural would have failed under the majority's new test. For example, in *American Steel Foundaries v. Tricity Central Trades Council*, 257 U.S. 184 (1921), the Supreme Court considered whether the Clayton Act should apply where a lower court had already issued an injunction on striking employees. The statute began: "[n]o restraining order or injunction shall be granted by any court of the United States . . ." and then listed various circumstances. 257 U.S. at 201. This placed a new obligation or duty on courts, but the Court was not a party. *See also Berner*, 265 Va. at 413 n.2 (explaining that the precursor to Code § 1-238 created a new interpretive default rule for our Courts, but the rule affected only procedure).

- 32 -

concludes that the search was based only on the smell of marijuana, the evidence from the search should be excluded.